```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                          :
UNITED STATES OF AMERICA ex rel.          :
MICHAEL J. DAUGHERTY,                     :
                                          :    14cv4548(DLC)
                    Plaintiff,            :
                                          :    OPINION AND ORDER
          -v-                             :
                                          :
TIVERSA HOLDNG CORP., TIVERSA INC.,       :
TIVERSA GOVERNMENT INC., and ROBERT       :
BOBACK,                                   :
                                          :
                    Defendants.           :
                                          :
-----------------------------------------X
```

APPEARANCES:

For the relator:
James W. Hawkins
James W. Hawkins, LLC
11339 Musette Circle
Alpharetta, Georgia 30009

For defendants Tiversa Holding Corp., Tiversa Inc., and Tiversa Government Inc.:
Steven W. Zoffer
Dickie, McCamey & Chilcote
Two PPG Place, Suite 400
Pittsburgh, Pennsylvania 15222

For defendant Robert Boback:
Brandon J. Verdream
Robert J. Ridge
Jonathan D. Klein
Clark Hill PLC
830 Third Avenue, Suite 200
New York, New York 10022

DENISE COTE, District Judge:

Michael J. Daugherty, relator, brings this qui tam action under the False Claims Act, 31 U.S.C. § 3729 et seq. ("FCA")

against Tiversa Holding Corporation, Tiversa Inc., and Tiversa Government Inc. (collectively "Tiversa") and against Robert Boback, a former Tiversa executive. The defendants have moved to dismiss the Amended Complaint ("FAC") for lack of jurisdiction under Rule 12(b)(1); for failure to state a claim under Rule 12(b)(6); and for failure to state fraud with particularity under Rule 9(b). For the reasons given below, the motions are granted in part.

## Background

In 1996, Daugherty founded a urology health center, LabMD, Inc. ("LabMD"). Tiversa uses peer-to-peer file sharing applications to find leaked files, and offers cybersecurity services to prevent leaks. Daugherty claims that the defendants targeted LabMD and that, when LabMD declined to pay for Tiversa's services, the defendants caused an FTC administrative action against LabMD that resulted in LabMD shutting down.

The following facts are taken from the FAC and documents attached to it. Broadly, the FAC alleges that Tiversa found digital files with sensitive information on domestic computers through Internet file-sharing applications, doctored those files to make them appear to have been found on computers in foreign countries, falsely claimed to the Government that the files were found on foreign computers, and thereby obtained (1) a contract

2

from the Transportation Security Administration ("TSA") for cybersecurity protection services, and (2) grant payments from the Department of Homeland Security ("DHS").

I. The TSA Contract

The FAC alleges that in 2011, Tiversa found sensitive information related to aircraft computers on a computer of a TSA employee in Denver, Colorado. Boback instructed an employee of Tiversa to create a report falsely making it "appear that the sensitive information was spreading through peer-to-peer networks."

In late spring or summer of 2011, Boback met with representatives of DHS and TSA in Arlington, Virginia. The FAC pleads "[o]n information and belief" that "one of the individuals with whom Boback met was Greg Maier, Chief Information Technology Security Operations for DHS." "Boback showed Maier and others" the false report and stated falsely that "sensitive search procedures for aircraft computers had been found on computers in foreign countries." The defendants then entered into a contract between Tiversa and TSA for "a monitoring service to detect sensitive information inadvertently or intentionally disclosed or posted on a network" (the "TSA Contract"). The contract was signed on August 3, 2011 and provided for payment of $324,000 to Tiversa for services over one year. The contract was extended for another year in August

2012, with an additional payment to Tiversa of $324,000.

II. The DHS Grant

In September 2006, DHS awarded a grant (the "DHS Grant") to Dartmouth College ("Dartmouth"). Professor M. Eric Johnson, then a director of a center at Dartmouth's business school, engaged Tiversa to partner with him in implementing Dartmouth's work on the DHS Grant.

Johnson published a paper in February 2009 using money from the DHS Grant (the "Johnson Paper"). The FAC alleges that the Johnson Paper falsely states that a LabMD file was found on a computer where Johnson "had found other dangerous data" (the "LabMD File"). On April 29, 2008, Johnson sent an email (the "April 2008 Email") to a Tiversa employee that included the following:

> We are coming well on the medical files -- finished going through all the files. We are working on the report now. We turned up some interesting stuff -- not as rich as the banks, but I guess that could be expected. Any chance you could share a couple other of your recent medical finds that we could use to spice up the report? You told me about the one database you[] found that could really boost the impact of the report. Certainly will coordinate with you on the report and release.

"In response to Johnson's request" in the April 2008 Email, Tiversa sent Johnson the LabMD File. Johnson and Dartmouth did not notify DHS that the Johnson Paper included false statements about the source of the LabMD File.

4

Dartmouth received $29,650,000 from the DHS Grant between 2006 and 2014. Recipients of grant money from DHS are required to submit "timely, complete and accurate quarterly progress reports to DHS." Dartmouth and Johnson submitted progress reports without disclosing the false statements regarding the LabMD File.

### Procedural History

The Complaint in this action was filed under seal on June 24, 2014. The case remained sealed pending the determination of the United States regarding whether to intervene. See 31 U.S.C. §§ 3730(b)(2)-(4). The United States declined to intervene by notice dated March 20, 2018. The docket and the Complaint were unsealed in April 2018.

Defendants filed motions to dismiss the Complaint on July 3, 2018. An Order filed July 5 directed Daugherty to file an amended complaint or to oppose the motions to dismiss by July 27, and noted that "[i]t is unlikely that [Daugherty] will have a further opportunity to amend." Daugherty responded to the motions to dismiss by filing the FAC on July 27. New motions to dismiss were filed on August 10, and became fully submitted on September 14.

**Discussion**

To survive a motion to dismiss for failure to state a claim, a complaint "must plead sufficient factual content to allow a factfinder to draw the reasonable inference that the defendant is liable for the misconduct alleged." Allen v. Credit Suisse Sec. (USA) LLC, 895 F.3d 214, 222 (2d Cir. 2018) (citation omitted). A court may "consider only those facts alleged in the complaint, and must draw all reasonable inferences in favor of the plaintiff." Wilson v. Dynatone Publ'g Co., 892 F.3d 112, 117 (2d Cir. 2018). "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016) (citation omitted). A court may also consider "matters of which judicial notice may be taken." Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc., 742 F.3d 42, 44 n.1 (2d Cir. 2014) (citation omitted).

In addition, because the FCA "is an anti-fraud statute," Daugherty "must plead fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b)." U.S. ex rel. Polansky v. Pfizer, Inc., 822 F.3d 613, 617-18 (2d Cir. 2016). "To satisfy this Rule, a complaint alleging fraud must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements

were made, and (4) explain why the statements were fraudulent." United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 25 (2d Cir. 2016) (citation omitted).

I. The TSA Contract Claims

Counts Three and Four of the FAC assert that the defendants violated the FCA when they obtained the TSA Contract. The defendants have moved to dismiss these claims for a variety of reasons. For the following reasons, the motions are denied.

A. The Elements of an FCA Claim

The FCA imposes liability on "any person who," inter alia, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. §§ 3729(a)(1)(A)-(B). To state a claim under the FCA, a relator must allege that the "defendants (1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." United States ex rel. Kirk v. Schindler Elevator Corp., 601 F.3d 94, 113 (2d Cir. 2010) (citation omitted), rev'd on other grounds, 563 U.S. 401 (2011). The term "claim" is defined in the statute as, inter alia, "any request . . . for money . . . that . . . is presented to an officer, employee, or agent of the United States." 31 U.S.C. § 3729(b)(2)(A).

7

There are two theories of fraud cognizable under the FCA: factual falsity and legal falsity. See Mikes v. Straus, 274 F.3d 687, 696-97 (2d Cir. 2001), abrogated in part on other grounds by Universal Health Servs., Inc. v. United States ex rel. Escobar, 136 S. Ct. 1989 (2016) ("Escobar"). Factually falsity involves "an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided." Mikes, 274 F.3d at 697. Legal falsity is where a claim is "predicated upon a false representation of compliance with a federal statute or regulation or a prescribed contractual term." Id. at 696.

Daugherty brings two FCA claims arising out of the TSA Contract, based respectively on § 3729(a)(1)(A) and § 3729(a)(1)(B). The FAC contains adequate allegations of a factual falsity in the defendants' procurement of the TSA Contract. The FAC alleges that Boback sought to obtain money from the Government in exchange for Tiversa's services. The FAC further alleges that Boback presented a document to the TSA that he knew was false, namely a report prepared at Boback's direction that misrepresented the IP address associated with a TSA file found on a peer-to-peer file sharing application. These allegations plausibly allege a violation of the FCA.

The FAC also pleads fraud with particularity. The FAC specifies that the fraudulent statement was a Tiversa report

that falsified the IP address at which a TSA file was found. The specific false statements in the report were (1) that the TSA file was "spreading through peer-to-peer networks" and (2) that the TSA file had been "found on computers in foreign countries." The speaker is identified as Boback. The statement was conveyed to TSA employees at a meeting that occurred in Arlington, Virginia in "late spring or summer of 2011." These allegations are specific enough to pass muster under Rule 9(b).

The defendants principally argue that, because the identity of the TSA officials with whom Boback met is not specifically alleged, the fraud claims fail to plead fraud with particularity. Not so. Daugherty has pleaded that Boback met with TSA officials during a specified period, has specifically described the allegedly false statements made by Boback to the TSA, and has attached the resulting TSA Contract for Tiversa's cybersecurity services to the FAC. These allegations are sufficient to plead fraud.

B. The Public Disclosure Bar

FCA claims may not be brought if the allegations or transactions underlying the suit were previously disclosed publicly. See 31 U.S.C. § 3730(e)(4). This provision is the public disclosure bar, and it was amended in 2010. See Patient Protection and Affordable Care Act, Pub. L. No. 111-148 § 10104, 124 Stat. 119, 901-902 (2010). It currently provides in

9

relevant part as follows:

> The court shall dismiss an action or claim under this section . . . if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . .

31 U.S.C. § 3730(e)(4) (2012).

Prior to 2010, the public disclosure bar provided that "[n]o court shall have jurisdiction" over an action under the FCA where the allegations or transactions had been publicly disclosed. 31 U.S.C. § 3730(e)(4)(A) (2006). The pre-2010 public disclosure bar thus restricted a court's jurisdiction to hear FCA claims. See United States ex rel. Chorches v. Am. Med. Response, Inc., 865 F.3d 71, 80 (2d Cir. 2017) ("Chorches"). But, the current public disclosure bar is "no longer jurisdictional in nature." Id. As a result, prior public disclosure for claims governed by the post-2010 FCA must be analyzed under Rule 12(b)(6), not Rule 12(b)(1).[1]

---

[1] This distinction is significant for at least three reasons. First, a court may resolve factual disputes and consider extrinsic evidence when resolving a Rule 12(b)(1) motion, but may not do so when resolving a Rule 12(b)(6) motion unless the documents are incorporated in the pleading. See Nicosia, 834 F.3d at 230-31 (Rule 12(b)(6)); Carter v. HealthPort Tech., LLC, 822 F.3d 47, 57 (2d Cir. 2016) (Rule 12(b)(1)). Second, a dismissal pursuant to Rule 12(b)(1) is without prejudice, whereas a dismissal pursuant to Rule 12(b)(6) is with prejudice. See Katz v. Donna Karan Co., 872 F.3d 114, 121 (2d Cir. 2017) (Rule 12(b)(1)); Berrios v. N.Y.C. Housing Auth., 564 F.3d 130, 134 (2d Cir. 2009) (Rule 12(b)(6)). Third, "the party invoking the jurisdiction of the court has the burden of proof in a 12(b)(1) motion, in contrast to a 12(b)(6) motion, in which the

This case was filed in 2014, and the TSA Contract claims are premised on conduct that occurred beginning in 2011. Accordingly, the current public disclosure bar applies to these claims.

The public disclosure bar requires a claim to be dismissed if "substantially the same allegations or transactions . . . alleged in the action or claim" have been "publicly disclosed" in "a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party," in "a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation," or "from the news media," with one exception. 31 U.S.C. § 3730(e)(4)(A). The public disclosure bar does not apply if "the person bringing the action is an original source of the information." Id.

The parties debate whether a number of federal hearings and investigations, as well as a book published by Daugherty in 2013,[2] constitute public disclosures within the meaning of § 3730(e)(4)(A). Most of these activities occurred after the filing of the original complaint in this action; some are also actions between private parties, which cannot generate public

---

defendant has the burden of proof." Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003).

[2] Although it is arguable whether Daugherty's book is susceptible of judicial notice, Daugherty attached it to his opposition brief.

11

disclosures within the meaning of the current public disclosure bar. See id. § 3730(e)(4)(A)(i) (limiting public disclosures to those revealed in a "hearing in which the Government or its agent is a party"). The remaining documents -- litigation between LabMD and the FTC, and a book published by Daugherty in 2013 -- do not disclose "substantially the same allegations or transactions" as those underlying the TSA Contract claims.

The D.C. Circuit has interpreted the phrase "allegations or transactions" as follows:

> [T]he term "allegation" connotes a conclusory statement implying the existence of provable supporting facts. The term "transaction" suggests an exchange between two parties or things that reciprocally affect or influence one another. On the basis of plain meaning, and at the risk of belabored illustration, if X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed. The language employed in § 3730(e)(4)(A) suggests that Congress sought to prohibit qui tam actions only when either the allegation of fraud or the critical elements of the fraudulent transaction themselves were in the public domain.

United States ex rel. Springfield Terminal Ry. Co. v. Quinn, 14 F.3d 645, 653-54 (D.C. Cir. 1994) ("Springfield") (emphasis in Springfield) (citation omitted). Here, the allegation of fraud by Tiversa on the TSA is not made directly in the FTC litigation or in Daugherty's book. Indeed, the TSA does not appear to be

mentioned in these sources. Nor do these sources disclose the essential elements of Daughtery's allegation of fraud. "Fraud requires recognition of two elements: a misrepresented state of facts and a true state of facts." Id. at 655 (emphasis in original). The defendants have not shown that the true state of facts -- that Tiversa falsified a TSA file's IP address -- was made public before 2014. Accordingly, at least one critical element of the fraudulent transaction was not publicly disclosed. As a result, the motions to dismiss are denied as to Counts Three and Four of the FAC.

II. The DHS Grant Claims

The defendants move to dismiss Counts One and Two of the FAC, premised on the DHS Grant, for lack of jurisdiction, contending that the pre-2010 public disclosure bar applies to those claims. The defendants also move to dismiss for failure to state a claim and for failure to plead fraud with particularity. For the reasons that follow, Counts One and Two are dismissed in part with prejudice and in part without prejudice.

A. Public Disclosure Bar

The parties dispute whether the current or pre-2010 version of the public disclosure bar applies to the DHS Grant claims. For the following reasons, the pre-2010 version applies to the portion of these claims where payment was made by the Government

13

before March 23, 2010, the effective date of the 2010 FCA amendment. In addition, the motions to dismiss the pre-March 2010 portions of Counts One and Two for lack of jurisdiction are granted.

The DHS Grant claims are premised on a grant that was paid by DHS from 2006 to 2014. Beginning in 2009, Dartmouth and Johnson submitted quarterly progress reports to DHS which falsely represented the research methodology being used. The FAC thus alleges a scheme that did not conclude until well after the 2010 amendment to the public disclosure bar. This presents the problem of which public disclosure bar applies to the claims in the FAC. Neither the Second Circuit nor the Supreme Court has addressed whether the 2010 amendment to the FCA is retroactive. Relevant precedent, however, dictates that it is not.

In Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939 (1997), the Supreme Court addressed the effect of a 1986 amendment to the FCA on a case filed after that amendment took effect but premised on conduct that occurred prior to the amendment. Id. at 946. The Court held that the 1986 amendment did not apply, because of the "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place." Id. (citation omitted). In so holding, the Court explained that the "presumption against

retroactive legislation" controls "unless Congress has clearly manifested its intent to the contrary." Id.  More recently, the Court noted that the 2010 FCA amendment to the public disclosure bar "makes no mention of retroactivity." Graham Cty. Soil & Water Conserv. Dist. v. United States ex rel. Wilson, 559 U.S. 280, 283 n.1 (2010) ("Wilson").  Accordingly, the 2010 amendment to the public disclosure bar is not retroactive.

An FCA claim accrues "on the date the claim is made, or, if the claim is paid, on the date of payment." United States ex rel. Kreindler & Kreindler v. United Tech. Corp., 985 F.2d 1148, 1157 (2d Cir. 1993) ("Kreindler") (citation omitted).  Further, "the number of assertable FCA claims is . . . measured . . . by the number of fraudulent acts committed by the defendant." Id.  The public disclosure bar amendment took effect on March 23, 2010, Wilson, 559 U.S. at 283 n.1, and the FAC alleges that false claims were presented to DHS both before and after that date.  Thus, the pre-2010 version of the public disclosure bar applies to fraudulent claims paid by the Government before March 23, 2010, and the current version applies to claims paid after that date, or presented after that date and never paid.

Because the pre-2010 public disclosure bar limits jurisdiction, it must be resolved as to FCA claims accruing before March 23, 2010.  See Kreindler, 985 F.2d at 1155-56.  The pre-2010 version of the public disclosure bar provides as

follows:

> (A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
> (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4) (2006).

The allegations supporting the DHS Grant claims are that Professor Johnson conspired with Tiversa to falsify the origin of the LabMD File, falsely reported the origin of that file in the Johnson Paper, and submitted progress reports to DHS that did not disclose that the LabMD File was not found in accordance with the search protocol. "Fraud requires recognition of two elements: a misrepresented state of facts and a true state of facts." Springfield, 14 F.3d at 655 (emphasis in original). A motion filed by LabMD in 2014 in an FTC action against it contains the following allegation: The LabMD File "was stolen by Tiversa from a LabMD computer, given to Dartmouth College to

spice up its report, and then given to the FTC . . . ."[3] This constitutes a public disclosure in an administrative proceeding of the "true" state of facts on which the DHS Grant claims are based -- that Tiversa and Johnson lied when they claimed that the LabMD File was found in accordance with the DHS Grant search protocol. Accordingly, the Court only has jurisdiction over the pre-March 2010 portions of the DHS Grant claims if Daugherty was an original source.

To be an original source, Daugherty must have "(1) had direct and independent knowledge of the information on which the allegations are based, (2) voluntarily provided such information to the government prior to filing suit, and (3) directly or indirectly been a source to the entity that publicly disclosed the allegations on which the suit is based." United States v. N.Y. Medical College, 252 F.3d 118, 120 (2d Cir. 2001). A relator "does not satisfy the first requirement if a third party is the source of the core information upon which the qui tam complaint is based." Id. at 121 (citation omitted). Daugherty's opposition brief states that "LabMD . . . would not learn about Tiversa's fraudulent representations before April 2, 2014, when Richard Wallace, a former Tiversa employee, blew the whistle on Tiversa." This statement indicates that Wallace

---

[3] See Respondent's Motion to Dismiss at 8 n.8, In re LabMD, Inc., FTC Docket No. 9357 (filed May 27, 2014), https://www.ftc.gov/system/files/documents/cases/140527respmtndismiss.pdf.

17

informed LabMD that Tiversa had made false statements to the Government about the source of the LabMD File. Accordingly, Daugherty is not an original source. The portions of Counts One and Two that allege false claims prior to March 23, 2010 are dismissed for lack of jurisdiction.

    B. Materiality

Because the current public disclosure bar is non-jurisdictional, the defendants' arguments for dismissing the post-March 2010 portions of the DHS Grant claims may be considered in any order. For the reasons that follow, Counts One and Two are dismissed in their entirety with prejudice for failure to plead materiality.

Materiality is defined in the FCA as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). Materiality "cannot be found where noncompliance is minor or insubstantial." Escobar, 136 S. Ct. at 2003.

> [P]roof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement. Conversely, if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material. Or, if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position,

>     that is strong evidence that the requirements are not
>     material.

Id. at 2003-04.[4]

The FAC pleads only in a conclusory fashion that the Government refuses to pay grants due to falsified methodology. The FAC cites general policies of the United States Government stating that compliance with grant conditions is important to the Government. Under Escobar, this is insufficient.

Further, it is implausible that the false statement -- the source of the LabMD File -- would have been material to the grant. DHS paid over $29 million to Dartmouth over an 8-year period. The Johnson Paper, published in 2009, analyzed "1,654 documents" found on peer-to-peer file sharing applications.[5] The DHS Grant and the Johnson Paper were both significantly wider ranging than the LabMD File. It is implausible that falsifying a single IP address would materially affect the Government's decision to pay Dartmouth.

---

[4] Although Escobar was an appeal from the grant of a motion to dismiss, see 136 S. Ct. at 1998, the discussion quoted above addresses the evidentiary burdens that would apply at later stages of litigation. The Court made clear, however, that "plaintiffs must also plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b) by, for instance, pleading facts to support allegations of materiality." Id. at 2004 n.6.

[5] Because the Johnson Paper is referred to extensively in the FAC and attached to the FAC, it may properly be considered on a motion to dismiss for failure to state a claim.

19

III. The FCA Conspiracy Claim

The FAC also alleges that the defendants conspired to violate the FCA.  Defendants solely attack this claim on the ground that Daugherty's other claims fail.  Because Counts Three and Four of the FAC survive, the motions to dismiss are denied as to the FCA conspiracy claim in Count Five.

## Conclusion

The August 10 motions to dismiss are granted as to Counts One and Two, in part without prejudice and in part with prejudice, as explained above.  The motions to dismiss are otherwise denied.

Dated:    New York, New York
          October 17, 2018

```
                              _____
                                      DENISE COTE
                              United States District Judge
```