IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel*. Michael J. Daugherty, | ) ) ) | |
| Plaintiff and Relator, | ) ) ) | |
| v. | ) ) | Civil Action No. 14-CV-4548-DLC |
| TIVERSA HOLDING CORP., TIVERSA<br>INC., TIVERSA GOVERNMENT INC.<br>and ROBERT BOBACK, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## BRIEF IN SUPPORT OF RELATOR MICHAEL J. DAUGHERTY'S MOTION TO MODIFY PRETRIAL SCHEDULING ORDER TO EXTEND FACT DISCOVERY DEADLINE

**I.  INTRODUCTION**

On May 9, 2019, Administrative Judge Christine Ward of the Allegheny County Court of Common Pleas lifted the stay of discovery in Defendant Robert J. Boback's defamation lawsuit against Mr. Daugherty and his company LabMD, Inc. and specifically ordered the parties to "cooperate and coordinate discovery."  This is one of the lawsuits that Tiversa's counsel told the Court on December 7, 2018, needed discovery to be coordinated with discovery in this case.

Mr. Boback's defamation lawsuit involves all of the parties and many of the facts and witnesses involved in this case.  LabMD shows that good cause exists to extend the fact discovery deadline in this case in order to accommodate Judge Ward's order, to reduce the imposition on witnesses, to reduce the parties' costs and burdens  and otherwise achieve the undeniable benefits of coordinated discovery.

Good cause exists to extend the fact discovery deadline for additional reasons.  Mr. Daugherty has diligently pursued discover in this and related actions.  Indeed, Mr. Daugherty has

attempted to coordinate discovery with Tiversa in this and other litigation only to have Tiversa refuse coordination in order to unduly prejudice Mr. Daugherty.

On April 26, 2019, with less than five (5) weeks before the June 1, 2019 fact discovery deadline in a related lawsuit in federal court in the Western District of Pennsylvania, Tiversa produced its first of at least two anticipated rounds of documents.  Because of delay and technical issues downloading Tiversa's production, Mr. Daugherty and LabMD (the plaintiff in that action) were not able to identify and collect exhibits for the depositions of overlapping witnesses until the second week of May.  Jarrod Shaw, Tiversa's counsel in that action, had previously forecast that Tiversa's first round of documents would be produced by mid-March yet has given no explanation for the six-week delay, refuses to coordinate depositions of overlapping witnesses, and refuses to consent to an extension of the discovery period to accommodate the prejudice LabMD and Mr. Daugherty are suffering from Tiversa's late production.

Despite Tiversa's commitment to this Court to coordinate discovery, Tiversa's counsel in this action, Steven Zoffer, likewise refuses to coordinate depositions of overlapping witnesses and likewise refuses to consent to an extension that is needed here to coordinate discovery and to accommodate Mr. Daugherty given Tiversa's late production.  Several depositions have now been noticed but it is not feasible for the depositions to be taken before the close of discovery, especially with Tiversa being unwilling to coordinate overlapping third party witness depositions.

Unless the discovery period is extended, Mr. Daugherty will be severely prejudiced by Tiversa's conduct.

In order to achieve coordinated discovery with consistent discovery deadlines, LabMD and Mr. Daugherty are filing contemporaneously herewith Motions for Discovery Coordination Orders in this action and in the action filed by LabMD, Inc. against Mr. Boback and Tiversa in the Western

District of Pennsylvania.  In addition,  Mr. Daugherty is filing contemporaneously herewith a Motion to Modify the Revised Case Management Order in that action in order to achieve consistent discovery deadlines so that the parties may coordinate all remaining fact discovery.

## II.     STATEMENT OF FACTS

### A.     Three Actions are Related.

On February 25, 2008, Tiversa, Inc. accessed a LabMD computer in Atlanta, Georgia and downloaded a 1,718-page confidential LabMD document containing personal health information on over 9,000 patients (hereinafter referred to as the "1718 File").  This unauthorized access of LabMD's computer and subsequent theft, download, possession and distribution of a file that contained personal health information was a felony under 42 U.S.C. § 1320d-6 (Unlawful Possession and Use of Personal Health Information) and O.C.G.A. § 16-9-93 (Computer Crimes), in addition to other crimes.  Several months after its theft, Tiversa informed LabMD that it had "found" a copy of the 1718 File, that the 1718 File was spreading through cyberspace and that LabMD needed to pay Tiversa to remediate the "leak" or Tiversa would turn LabMD in to the FTC.  When LabMD refused to pay, Tiversa followed through on its threat by reporting LabMD to the FTC along with over 80 other companies that also refused to be shaken down by Tiversa in the same fraudulent scheme.

The FTC investigated LabMD and Daugherty for three and a half years.  It was an intrusive and exhaustive inquisition where FTC investigators issued burdensome voluntary access requests and civil investigative demands, terrifying and demoralizing LabMD staff and management. LabMD and Daugherty produced thousands of pages of documents, sat for hours of interviews and met with the FTC on numerous occasions by telephone and in person, only to be told by the FTC

2

investigators, time after time, that LabMD's responses were inadequate.  Meanwhile, Tiversa was fueling the FTC's investigation with false information.

On July 19, 2013, Daugherty posted a promotional trailer on the internet for *The Devil Inside the Beltway*, a book he had written about his ordeal with Tiversa and the FTC.  The book, which was published in mid-September 2013, exposed Tiversa's theft of the 1718 File, the confidential relationship between the FTC and Tiversa and the FTC and Tiversa's abuse of Daugherty's small cancer detection laboratory.

On September 5, 2013, Tiversa and Mr. Boback filed a defamation action against LabMD, Inc. and Mr. Daugherty in the United States District Court for the Western District of Pennsylvania, Civil Action No. 2:13-cv-01296-NBF (hereinafter the "*Federal Defamation Action*").  Tiversa and Boback's defamation claims against LabMD and Mr. Daugherty are summarized in paragraph 36 of the first complaint in the *Federal Defamation Action*:

> In essence, Mr. Daugherty has stated, in many different mediums, that Tiversa illegally accessed and stole LabMD's files, and then extorted LabMD in an attempt to obtain business. When LabMD refused, according to Mr. Daugherty, Tiversa sent the files to the FTC, to begin an investigation into LabMD.[1]

In their first amended complaint filed on December 24, 2013, Tiversa and Mr. Boback included the specific allegation that Tiversa found LabMD's 1718 File on computers of known bad actors in San Diego, California, Arizona, Costa Rica and London.

In April 2014, former Tiversa employee Richard E. Wallace blew the whistle on Tiversa and Mr. Boback, later testifying under criminal immunity that (1) Tiversa took the 1718 File only from LabMD's computer in Atlanta, Georgia; (2) Tiversa never found the 1718 File on computers in San Diego, California, Arizona, Costa Rica and London or anywhere else; and (3) Tiversa

---

[1] Similar summary statements are found in each of the other four complaints filed by Tiversa and Mr. Boback against LabMD and Mr. Daugherty.

altered the metadata on the 1718 File to make it appear as if it had been located on computers in San Diego, Arizona, Costa Rica and London.

On June 24, 2014, based on further information provided by the whistleblower, Mr. Daugherty, on behalf of the United States of America, filed this action (hereinafter the "*Qui Tam Action*"). Mr. Daugherty alleges in his amended complaint that Tiversa and Boback had defrauded the Transportation Security Administration using the same fraudulent scheme it had foisted upon many others – Tiversa fraudulently induced the TSA to enter into a monitoring contract with Tiversa based on Tiversa's false claim that it found sensitive TSA files spreading in cyberspace.

On September 23, 2014, Tiversa and Boback filed in the Allegheny County Court of Common Pleas the same defamation action they had filed in federal court against Mr. Daugherty and LabMD with additional defamation claims against the whistleblower, Mr. Wallace, and LabMD's law firm, Cause of Action Institute, for reporting Tiversa and Boback's frauds to Congress (hereinafter the "*State Defamation Action*").[2]

In its First Amended Complaint in a lawsuit LabMD filed on January 21, 2015 against Tiversa and Mr. Boback in the Western District of Pennsylvania, Civil Action No. 2:15-cv-00092-MPK (hereinafter the "*Pennsylvania I Action*"), LabMD alleges, *inter alia*, that Tiversa and Mr. Boback's claim that LabMD made the 1718 File "publicly available" is false and defamatory. Among other reasons, Boback and Tiversa make this false claim to insulate themselves from civil and criminal liability for taking confidential, sensitive and legally protected data directly and solely from businesses, state and federal governments and U.S. citizens' computers.

---

[2] The *Federal Defamation Action* against LabMD and Mr. Daugherty were dismissed without prejudice on November 4, 2014.

In sum, the *State Defamation Action*, the *Pennsylvania I Action*, and the *Qui Tam Action* are closely related.  They all involve Tiversa,[3] Mr. Boback, Mr. Daugherty and LabMD.  They all involve the exposure of Tiversa and Boback's fraudulent schemes by the whistleblower, Mr. Wallace.  The parties, witnesses, facts and many legal issues are the same in all three actions.  The close relationship between these actions has been underscored by ***Tiversa*** and former ***Tiversa*** employees in their repeated requests for and commitment to coordinated discovery.

B.     **In the *State Defamation Action*, The Stay of Discovery Has Just Been Lifted and the Parties Have Been Ordered to Coordinate Discovery.**

By Order dated May 9, 2019, Judge Christine Ward of the Allegheny County Court of Common Pleas lifted the stay of discovery in the *State Defamation Action*.  In her ruling, Judge Ward specifically ordered the "parties to cooperate and coordinate discovery."  A true and correct copy of this order is attached hereto, marked as Exhibit A and incorporated herein by reference.  As a consequence, Mr. Daugherty and LabMD submit that this ruling alone constitutes good cause to extend and coordinate discovery deadlines in the *Qui Tam* and *Pennsylvania I Actions*.

At Mr. Boback's request, Judge Ward ruled that no depositions should be taken before the next status conference scheduled for July 30, 2019.   True and correct copies of relevant portions of the transcript from Judge Ward's May 9, 2019 status conference are attached hereto, marked as Exhibit B and incorporated herein by reference.

Because no depositions have been taken in the *Pennsylvania I, Qui Tam or State Defamation Actions*, an extension of discovery and formal coordination order will allow *all* overlapping witness depositions in all three cases to be coordinated.

C.     **Former Tiversa Employees Requested and Committed to Coordinated Discovery in the *State Defamation Action*.**

---

[3] Tiversa withdrew from the *State Defamation Action* by filing a dismissal with prejudice on March 10, 2016, shortly after Tiversa headquarters were raided by the FBI.

Judge Ward previously stayed discovery in the *State Defamation Action* on several occasions at the request of Mr. Boback.  The most recent stay of discovery came at the behest of several former *Tiversa* employees.  Those former employees were represented by Tiversa attorney Stephen Zoffer[4] who, by motion made on March 12, 2018, specifically requested that Judge Ward order the parties to coordinate discovery in order to minimize the imposition on third party witnesses.  A true and correct copy of Mr. Zoffer's motion is attached hereto, marked as Exhibit C and incorporated herein by reference.  In response to Mr. Zoffer's motion, Judge Ward stayed discovery in the *State Defamation Action* "so that coordination of this action with other actions between the parties occurs."  A true and correct copy of Judge Ward's order staying the *State Defamation Action* is attached hereto, marked as Exhibit D and incorporated herein by reference.  Mr. Zoffer committed to Judge Ward that he would work with counsel for the parties in the *State Defamation Action*, the *Qui Tam Action* and the *Pennsylvania I Action* to coordinate discovery.  Judge Ward's May 9, 2019 Order mandates that Mr. Boback, Mr. Daugherty and LabMD coordinate discovery in the *Qui Tam* and *Pennsylvania I Actions*.

**D.**     **Tiversa Requested and Committed to Coordinated Discovery in the *Qui Tam Action*.**

In December of 2018, Mr. Zoffer, on behalf of *Tiversa*, and in furtherance of his commitment to Judge Ward to coordinate discovery, told this Court that discovery needed to be coordinated in these actions.  The Court agreed and emphasized the merits of coordinated discovery, as shown in the following excerpts from the transcript of the December 7, 2018 conference:

> THE COURT: Back on the record. So defense counsel has just informed me that there is related litigation in a number of jurisdictions. He has focused most on state court litigation

---

[4] Mr. Zoffer represents Tiversa Holding Corp. and several Tiversa entities in the *Qui Tam Action.*

in Pennsylvania. Why don't you pick up there, Mr. Zoffer. You want to coordinate any discovery in this action with discovery in the Pennsylvania action?

MR. ZOFFER: Your Honor, yes, I do.

\* \* \*

THE COURT: So, I am happy to coordinate with any federal or state judge to make the parties' life easier and the administration of justice easier in any courtroom. That's fine with me; I do it all the time.

MR. ZOFFER: Thank you, your Honor.

THE COURT: And normally parties propose a coordination order that includes language to the effect that documents produced in one case are deemed produced in another; a deposition taken in one case can be used in another, so that deponents are not deposed multiple times. And that's efficient for everyone. Parties don't have to pay for lawyer time to repeat work. Deponents don't have to submit to duplicative depositions. So, I will ask the parties to coordinate with each other and present perhaps to me and another judge a coordination order, if they'd like me to consider it. I'm also happy, if you would like me to, to call the other judge and express what I've expressed here on the record, my willingness to coordinate, if the other judge would like to. You can give me the judge's name and telephone number in a letter, with a request that I make that communication. I'm happy to make the first call. I don't need to be called. I'm happy to place the call, anything that will assist the parties in this regard to make your lives easier.

Exhibit E hereto contains true and correct copies of pages from the transcript of Judge Cote's

initial conference where the quoted language is found.

Good cause exists to extend and coordinate discovery deadlines in order to accommodate

the undeniable benefits of coordinated discovery.

### E.   Discovery Cannot Be Coordinated Unless Discovery Deadlines in the *Qui Tam* and *Pennsylvania I Actions* Coincide With Discovery in the *State Defamation Action*.

As noted in Mr. Zoffer's brief requesting Judge Ward to order coordinated discovery,

"coordination include[s] coordinated scheduling of discovery deadlines, uniform deposition

protocol, and cross noticing of depositions to prevent redundancy." Such coordination cannot be

accomplished without extending the discovery deadlines in the *Qui Tam Action* and the

*Pennsylvania I Action* to coincide with discovery in the *State Defamation Action*.  Counsel for Mr. Daugherty and LabMD in the *State Defamation Action*[5] believe the parties in that action will need at least eight (8) months after the July 30, 2019 status conference to complete discovery.  To accommodate the discovery needs in the *State Defamation Action*, LabMD and Mr. Daugherty respectfully request an extension of the fact discovery deadlines in the *Qui Tam* and *Pennsylvania I Actions* to allow eight (8) months of coordinated fact discovery in the *State Defamation Action*.

> **F.     Mr. Daugherty and LabMD Have Diligently Pursued Discovery in The *Qui Tam*, *Pennsylvania I* and *State Defamation Actions*.**
>
> **1.     State Defamation Action**

In the *State Defamation Action*, LabMD and Mr. Daugherty served a Notice of Deposition of Robert J. Boback and a First Set of Interrogatories and Request For Production of Documents Directed to Robert J. Boback on July 1, 2016.  Exhibit F hereto is a true and correct copy of the cover letter for these requests.  Because Mr. Boback sought and received a number of stays in the *State Defamation Action*, he did not respond to LabMD and Mr. Daugherty's written discovery until February 11, 2019.  Exhibit G hereto is a true and correct copy of Mr. Boback's responses. Based upon Judge Ward's grant of his most recent request, Mr. Boback has no obligation to attend a deposition until after July 30, 2019.  See Exhibit B.

On or about July 18, 2016, Mr. Daugherty and LabMD served a subpoena on Tiversa in the *State Defamation Action*.  Exhibit H hereto is a true and correct copy of that subpoena.  Tiversa responded with a Motion to Quash LabMD and Michael J. Daugherty's Subpoena.  Exhibit I is a true and correct copy of Tiversa's Motion to Quash.  Although that motion has yet to be resolved,

---

[5] Mr. Daugherty and LabMD are represented in the *State Defamation Action* by attorneys at Duane Morris who are not involved in the *Qui Tam* or *Pennsylvania I Actions*.  Mr. Hawkins, a sole practitioner, has been admitted in that action *pro hac vice* to represent Mr. Daugherty and LabMD to accommodate the need for coordinated discovery.

Tiversa, in furtherance of its commitment to coordinated discovery, agreed on February 14, 2019 that the documents it would produce in the *Pennsylvania I Action* would also be produced and could be used in the *State Defamation Action*.

### 2.      Pennsylvania I Action

In the *Pennsylvania I Action*, discovery began on August 29, 2017.  Exhibit J hereto is a true and correct copy of the August 29, 2017 Case Management Order in the *Pennsylvania I Action*. LabMD served its first set of written discovery requests on Mr. Boback and Tiversa on September 5, 2017, and a second request for production of documents on September 13, 2017.   Exhibit K contains true and correct copies of these requests.

In October of 2017, LabMD served or was in the process of serving (before the court stayed that action on October 24, 2017) approximately twenty-five (25) subpoenas duces tecum.   In addition, LabMD served six (6) subpoenas ad testificandum and related notices of depositions for Tiversa Board Member Joel Adams, former Tiversa Chief Information Officer Anju Chopra, former Tiversa Chief Operations Officer Keith Tagliaferri, former Assistant to Tiversa's CEO Molly Trunzo, former Tiversa Forensic Analyst and whistleblower Richard E. Wallace and InPax, the investigative firm Tiversa engaged to surveil Mr. Wallace and his family.   LabMD also noticed the deposition of Defendant Boback.  Exhibits L, M and N hereto are collections of the Notices of Deposition and Notices of Subpoenas.

The court in the *Pennsylvania I Action* lifted the stay and reopened discovery on February 7, 2019, and scheduled discovery to close on June 1, 2019.  Exhibit O hereto is a true and correct copy of the court's Revised Case Management Order.   During the February 7, 2019 status conference, the court and the parties discussed the fact that Tiversa would likely need to conduct a second search and make a second production of documents.  After Tiversa voiced no objection

to this, counsel for LabMD stated that, with a few additions, LabMD agreed that the custodians and search terms Tiversa proposed in October 2017 were sufficient for Tiversa's *first* search and production.  Exhibit P hereto is a true and correct copy of an October 7, 2017 email from Tiversa's counsel proposing a set of custodians and search terms.  A day after Tiversa's counsel represented at the February 7, 2019 status conference that he was likely to produce Tiversa's first round of documents by the end of March, counsel for LabMD and Tiversa came to final agreement on custodians and search terms for Tiversa's first production, as shown in Exhibit Q hereto.

On February 14, 2019, counsel for LabMD, Mr. Daugherty and Tiversa (*i.e.*, Jarrod Shaw, Ken Argentieri and Jim Hawkins), in furtherance of the parties' commitment to coordinate discovery, discussed coordinating the production of Tiversa's documents in *the Pennsylvania I Action* with Tiversa's production of documents in the *State Defamation Action*.  Mr. Shaw agreed to produce Tiversa's documents for use in both cases and expressed his belief at that time that Tiversa's production would likely occur by mid-March.

Tiversa did not produce its first round of documents in the *Pennsylvania I Action* in mid-March.  Instead, Tiversa produced those documents on April 26, 2019, almost six weeks after Mr. Shaw's mid-February forecast.  Moreover, the documents were produced in .tiff format and could not be downloaded by counsel for LabMD, a sole practitioner, until April 30, 2019.  LabMD quickly discovered that Tiversa had marked *every* one of its documents "confidential," thereby prohibiting LabMD and Mr. Daugherty from sharing any of Tiversa's production with third parties and inhibiting LabMD's investigation.  Mr. Shaw has not explained why he waited to produce Tiversa's documents until there were less than five (5) weeks of discovery left in the *Pennsylvania I* and *Qui Tam Actions*.

On April 30, 2019, in the *Pennsylvania I Action*, LabMD served a subpoena duces tecum and subpoena ad testificandum and related notice of deposition on former Tiversa employee and whistleblower Richard Wallace.   Exhibit R hereto contains true and correct copies of those documents.   On May 15, 2015, LabMD served notices of deposition for Joel Adams, Robert Boback, Mary Beth Buchanan, Ari Fleischer, Jason Shuck, David Sitler, Thomas Sydnor, Molly Trunzo and a Rule 30(b)(6) notice for Tiversa, all of which are scheduled before the close of discovery in the *Pennsylvania I* and *Qui Tam Actions*.   Exhibit S hereto contains true and correct copies of those documents.   As a practical matter, however, the parties will not be able to conclude those and other depositions noticed by Tiversa and Mr. Boback without an extension of the discovery period.

Tiversa served its first Notices of Deposition in the *Pennsylvania I Action* on May 1, 2019 for depositions of Mr. Wallace (May 28), Mr. Daugherty  (May 29) and LabMD (May 29).

All noticed depositions are scheduled for the last two weeks of the discovery periods in the *Qui Tam Action* and the *Pennsylvania I Action*.   Due to conflicting schedules, it is inconceivable that all depositions will be completed before discovery expires.

The parties have yet to exchange privilege logs.

### 3.    Qui Tam Action

By Order dated December 10, 2018 in the *Qui Tam Action* discovery is scheduled to close on May 31, 2019.   Exhibit T hereto is a true and correct copy of the Pretrial Scheduling Order (ECF No. 94).   As noted above, Tiversa requested at the December 7, 2018 initial conference, and the Court and Mr. Daugherty agreed, that discovery should be coordinated with discovery in the *Pennsylvania I* and *State Defamation Actions*.

Mr. Daugherty served his first set of written discovery requests on Tiversa on March 6, 2019.  See Exhibit U hereto.  Based on Tiversa's counsel's representations to the Court in the *Pennsylvania I Action* on February 7, 2019, Tiversa would have produced its first round of documents in the *Qui Tam Action* within a week of Tiversa's production in the *Pennsylvania I Action*.  A review of Tiversa's productions in both cases would have allowed Mr. Daugherty and LabMD to determine which witnesses overlapped and which documents would be needed for the overlapping witnesses.  Once that determination was made, Mr. Daugherty and LabMD would have been able to coordinate those depositions in accordance with Tiversa's commitment to this Court and the former Tiversa employees' commitment to Judge Ward in the *State Defamation Action*.

On February 25, 2019, Mr. Daugherty served a subpoena and related *Touhy* request on the Department of Justice to obtain the FBI's investigative file on Tiversa.  Exhibit V hereto is a true and correct copy of that subpoena.  The FBI's investigation of Tiversa and Mr. Boback relates to false statements Mr. Boback made to Congress and the FTC – the same false statements that are at issue in the *Qui Tam*, *Pennsylvania I* and *State Defamation Actions*.

On March 6, 2019, Mr. Daugherty served a Notice of Rule 30(b)(6) Deposition on Tiversa for a deposition to occur on April 16, 2019.  Exhibit W hereto contains true and correct copies of the subpoenas and deposition notice.  Counsel for Tiversa and Mr. Daugherty are negotiating how and when Tiversa will respond to that notice.

On March 29, 2019, Mr. Daugherty served subpoenas, a Rule 30(b)(6) Notice of Deposition and a related *Touhy* request on the Transportation Security Administration to obtain evidence of the government's reliance upon Tiversa and Boback's fraudulent statements.  Exhibit X hereto contains true and correct copies of the subpoenas and deposition notice.  The return dates

on those subpoenas were March 25, 2019 and April 26, 2019, respectively.  The Rule 30(b)(6) deposition of DHS/TSA was noticed for April 30, 2019.  Assistant United States Attorney Jean-David Barnea of the Southern District of New York has been assigned to respond to plaintiff's *Touhy* requests (document requests and deposition notice) to the Department of Justice and TSA.  AUSA Barnea informed counsel for Mr. Daugherty on May 17, 2019,  that he is working with the TSA to locate responsive documents, which was taking longer than expected because they are primarily located in the archived electronic files of former agency employees.  AUSA Barnea proposed discussing whether depositions were appropriate once the agencies complete their document productions.  He noted that the government could not commit to completing its response to the *Touhy* requests before the May 31, 2019 close of discovery.

Tiversa responded to Mr. Daugherty's first written discovery requests on or about April 5, 2019.  Tiversa's responses are deficient in several respects.  For example, as shown in Exhibits Y and Z hereto, Tiversa failed to provide an answer to any of sixteen interrogatories (16) and objected to each interrogatory and document request with form objections (*e.g.*, Tiversa objected to 11 of the 16 interrogatories and 37 of the 42 document requests as "overly broad" and "unduly burdensome").  LabMD met and conferred with counsel for Tiversa in an attempt to resolve the deficiencies, filed a letter motion for an informal conference and will soon file a motion to compel.

On April 24, 2019, Mr. Daugherty served his second Requests for Production of Documents and Things to Tiversa.  See Exhibit AA.  Responses to those requests are due before the close of discovery in the *Qui Tam Action*.

On April 30, 2019, Mr. Daugherty served subpoenas and a notice of deposition on Richard E. Wallace, the former Tiversa employee who blew the whistle on Tiversa and Mr. Boback's frauds on the government.   See Exhibit AB.  Pennsylvania counsel for Mr. Wallace has stated that Mr.

Wallace will not appear for his deposition until he secure New York counsel.  See Exhibit AC hereto.  No motion for protective order has been filed.  A motion to compel Mr. Wallace's attendance will likely be filed.

Because Tiversa did not produce its first round of documents in the *Pennsylvania I Action* until April 26, 2019, the late production delayed Mr. Daugherty and LabMD's ability to identify deponents and coordinate depositions in the *Qui Tam Action*.

On April 30, 2016, in furtherance of the parties' commitment to coordinate discovery in the *Qui Tam* and *Pennsylvania I Actions*, counsel for Mr. Daugherty and LabMD sent an email to Tiversa and Mr. Boback's counsel in the *Pennsylvania I Action* stating:

> Natalie, Jarrod, Bob and Brandon - I have attached your service copies of Notices of Subpoenas for subpoenas that will be served on Richard Wallace and a Notice of Deposition.  Although I've listed May 22, 2019 as the date for Mr. Wallace's deposition, I fully expect that we will work on selecting a date that is acceptable to everyone.
>
> There will be more notices of deposition, including one for Mr. Boback.  Please note that I am trying to plan and coordinate the depositions of all overlapping witnesses in the Qui Tam and PAI cases so that we can be as efficient as possible.  To that end, I may seek your consent to a relatively short extension of the discovery period.
>
> If you have any questions, please do not hesitate to let me know.
>
> Thank you.
>
> Jim

Tiversa's counsel's response to coordinating depositions was unexpected – "I'm not sure what you mean by coordinating witnesses in the Qui Tam action."  See Exhibit AD hereto.  Tiversa thereafter refused to coordinate any depositions other than the parties and the whistleblower.

On May 15, 2015, LabMD served notices of deposition for Mike Carulli, Anju Chopra, Jeromy Dean, Chris Gormley, Daniel Kopchak, Keith Tagliaferri, Andy Tormasi and Sean Ways. Exhibit AE are true and correct copies of these notices.

14

Tiversa served its first Notice of Deposition (Mr. Daugherty) in the *Qui Tam Action* on May 2, 2019.  Tiversa served its second Notice of Deposition (Mr. Wallace) on May 15, 2019.

All noticed depositions are scheduled for the last two weeks of the discovery periods in the *Qui Tam* and *Pennsylvania I Actions*.  Due to conflicting schedules, it is inconceivable that all depositions will be completed before discovery expires.

The parties have yet to exchange privilege logs.

### 4.      Overlapping Witnesses

Upon review of documents produced by Tiversa in the *Qui Tam Action* on April 9, 2019, and documents produced by Tiversa in the *Pennsylvania I Action* on April 26, 2019, LabMD and Mr. Daugherty have determined that there are at least a dozen overlapping fact witnesses in the *Qui Tam* and *Pennsylvania I Actions* (excluding the parties).  They and the basis for taking their depositions in the *Pennsylvania* and *Qui Tam Actions* are as follows:

| | |
|---|---|
| Richard Wallace | Former Tiversa Forensic Analyst who blew the whistle on Tiversa and Boback by disclosing Tiversa's fraudulent scheme of hacking computers and taking files from unsuspecting computer users, changing the metadata on those files to make them appear as if they were spreading in cyberspace and Tiversa's use of those falsified records to solicit business from LabMD, TSA and others.  Used proprietary law enforcement surveillance software (eP2P) to locate, access and download LabMD's 1718 File and is believed to have used that same software to obtain files for delivery to TSA after altering their metadata to make them appear to have come from computers of bad actors. |
| Keith Tagliaferri | Former Chief of Operations for Tiversa to whom Andy Tormasi and Mike Carulli reported during Tiversa's relationship with the TSA.  Tiversa's lead contact for TSA.   Attended Monthly Report Call with TSA and regularly corresponded with TSA employees.  Tagliaferri sent files to the TSA that Tiversa allegedly "found" in cyberspace and is believed to have awareness of the fraudulent scheme and knowledge of specific frauds related to TSA and LabMD.  As to LabMD, Tagliaferri, at Boback's request, created a June 2014 false report for Congress that Tiversa found LabMD's 1718 File on the computers of approximately seven known bad actors identity.   Subpoenaed to testify in FTC Enforcement Action against LabMD re 1718 File. |

| Andy Tormasi | Former Tiversa Federal Project Manager.  Reported to Tagliaferri.  Along with Carulli, was responsible for day-to-day work with TSA including discussions and delivery of files that Tiversa allegedly found spreading in cyberspace.  Has experience and knowledge of Tiversa altering metadata. Carulli and/or Tormasi created 104 "tickets" sent to TSA as well as monthly reports containing false information.  Custodian of spreadsheet with IP addresses where 1718 File was allegedly found. |
|---|---|
| Mike Carulli | Former Tiversa Senior Cyber Forensic Analyst - Reported to Tagliaferri.  Was responsible for gathering files to send to TSA.  High probability that Carulli altered metadata on files that were given to TSA.  Carulli and/or Tormasi created 104 "tickets" sent to TSA as well as monthly reports containing false information.  Involved in 2017 investigation at Tiversa re LabMD's 1718 File. |
| Molly Trunzo | Former Assistant to Tiversa CEO Boback.  Knowledge of fraudulent schemes and Boback's participation in them.  Knowledge of Tiversa's intimidation of witnesses, including surveillance video of Richard Wallace's children.  Responsible for invoicing TSA. |
| Daniel Kopchak | Former Tiversa Chief Financial Officer who negotiated the contract with TSA for monitoring services.  Has knowledge of representations made to TSA during contracting and contract extension stages.  Misrepresentations to Tiversa's bank re LabMD and Mr. Daugherty.  Responsible for creating List of 100 Targets Tiversa sent to FTC, including LabMD.  Knowledge of Boback's use of a LabMD attorney as a spy on LabMD and Mr. Daugherty.  Responsible for monthly meetings with FTC.  Awareness of false information provided to FTC and The Privacy Institute – a sham corporation Tiversa created to funnel documents to the FTC, including LabMD information. |
| Jason Shuck | Former Tiversa Network Administrator.  Knowledge of Tiversa's intimidation of witnesses, including Richard Wallace to prevent Wallace from testifying against Tiversa.  Knowledge of design of Tiversa systems that allowed forensic analysts to alter data and input files in Tiversa's Data Store (e.g., RAD Importer, File Importer).  Aware of Boback telling Jeromy Dean to put false IP addresses for LabMD's 1718 File in the Data Store.  Provided information regarding LabMD's 1718 File to Anju Chopra that she later misrepresented. |
| Jeromy Dean | Former Tiversa Manager of Application Engineering.  Awareness of Tiversa's practice of altering metadata on files taken by Tiversa from P2P networks.  Told by Boback to alter metadata on LabMD's 1718 File with false IP addresses. |
| Anju Chopra | Former Tiversa Chief Information Officer.  Knowledge of design and architecture of tools Tiversa used to (1) extract files from P2P networks; (2) export files into Tiversa's Data Store; (3) rename files, time and date stomping and other alterations to metadata (e.g., FileRenamer); developed false evidence to support Boback's fraudulent testimony regarding how and where Tiversa found LabMD's 1718 File and testified to Congress re same. |

16

| Sam Rosenberg | Private investigator hired by Tiversa to surveil, harass and intimidate whistleblower Richard Wallace and his family to prevent Wallace from testifying against Tiversa. |
| David Sitler | Former Lancaster Township policeman to whom Boback sent psychiatric report on Wallace. Knowledge of Boback's tactics to intimidate witness Richard Wallace and his family to prevent Wallace from testifying against Tiversa. |
| Mary Beth Buchanan | Authorized whistleblower Wallace's use of proprietary law enforcement software to assist FBI. Knowledge that Wallace used eP2P to take LabMD's 1718 File. |

All of the overlapping witnesses in the *Qui Tam* and *Pennsylvania I Actions* also overlap witnesses in the *State Defamation Action*.

**G.    Additional Documents and Things Are Needed from Tiversa in the *Pennsylvania I* and *Qui Tam Actions*.**

The following are examples of documents and things that Tiversa should have already produced or will need to produce (1) in the second production anticipated by Judge Kelly in the *Pennsylvania I Action* and (2) to cure its deficient production in the *Qui Tam Action*:

–   Documents showing what tools it used (*e.g.*, Tiversa's patented Eagle Vision software, LimeWire, eP2P, etc.) to search for TSA and LabMD files, how it hacked into computers to take those files or any evidence of where the files Tiversa allegedly found in cyberspace and sent to the TSA (via 104 "tickets") originated and when they were allegedly "found" by Tiversa.

–   The actual files Tiversa allegedly found and other documents Tiversa presented to TSA to convince it to enter into a contract with Tiversa;

–   The actual files Tiversa sent to the TSA after it entered into the contract;[6]

–   She source computer IP addresses and other metadata for the files Tiversa provided to the TSA;

–   Logs or other entries from Tiversa's SQL Server(s) showing the date all files at issue were downloaded into Tiversa's Data Store;

---

[6] Tiversa claims that none of the files it sent to the TSA can be produced due to TSA confidentiality regulations. Tiversa inexplicably refused Mr. Daugherty's offer that Tiversa produce redacted versions of those files.

– Documents relating to the Data Store Importer and a later iteration known as RAD Importer. These are custom programs designed by Tiversa software engineers that allowed Tiversa's forensic analysists to tamper with the evidence in Tiversa's Data Store.

– An October 1, 2007 Tiversa email admitting to Tiversa's regular practice of falsifying source IP addresses (this email was referenced in the search warrant affidavit used to obtain a warrant to search Tiversa headquarters on March 1, 2016. A copy of the search warrant was attached to plaintiff's discovery requests and was separately produced to Tiversa's counsel);

– Documents regarding FileRenamer, a tool Tiversa used to alter metadata in its Data Store.

– The list of "Burnt" IP Addresses Tiversa used to falsify source IP addresses (this document was also referenced in the search warrant affidavit used to obtain a warrant to search Tiversa headquarters on March 1, 2016);

– In 2014, Tiversa provided over 30,000 Bates-labeled pages of documents to the U.S. House of Representatives Committee on Oversight and Government Reform and U.S. Attorney David J. Hickton to support Boback's claims in the FTC Enforcement Action that LabMD's 1718 was publicly available, that the file was spreading in cyberspace and that Tiversa did not falsify IP addresses. Tiversa failed to produce *any* of those documents.

– In 2014, Tiversa gave U.S. Attorney David J. Hickton copies of seven recorded witness statements of current and former Tiversa employees who allegedly supported Boback's claims in the FTC Enforcement Action that LabMD's 1718 was publicly available, that the file was spreading in cyberspace and that Tiversa did not falsify IP addresses. Tiversa failed to produce *any* of these prior recorded statements.

– Although Tiversa used Ari Fleisher's firm to prepare Boback's defamatory letter to the editor of the *Wall Street Journal*, Tiversa produced no drafts or communications to show who actually authored the language at issue and what kind of fact checking, if any, was performed by those who authored or contributed to the letter.

– Tiversa has not produced anything that would permit a forensic examination to determine:

  o The actual product Tiversa used (*e.g.*, Eagle Vision, LimeWire, eP2P) to search for, access and download LabMD's 1718 File;

  o The actual product Tiversa used (*e.g.*, Eagle Vision, LimeWire, eP2P) to search for, access and download files Tiversa sent to the TSA (before and after the contract was signed);

o   Whether Tiversa used Ichabod, a malware device developed by Tiversa that Tiversa could surreptitiously plant on anyone's computer on a P2P network. Ichabod would send everything on a computer's hard drive to Tiversa;

o   The operating system files of the computers used to run those software programs (typically on the primary drive, or C-drive, of such computers);

o   The database files associated with such programs (typically stored on secondary drives, or D-drive, or network storage areas dedicated to database files;

o   The individual file stores containing the 1718 File and other files originally downloaded by Tiversa. This may be on network file storage locations, on independent hard drives, or other storage media. This includes the area referred to by Tiversa employees as "Scratch" or the server referred to as "TIF TFF" or possibly "TIF TFS;"

o   How and when Tiversa employees used time stomping software (*e.g.* "File Renamer") to change the system times and dates of the 1718 File and other downloaded files;

o   How and when Tiversa employees used proprietary utilities (e.g. "Data Store Importer" and "RAD Importer") to inject the 1718 File and other files into Tiversa's Data Store and then alter metadata within the Data Store. According to experts, examination of the Data Store, the software programs and the operating system event is the most likely, and perhaps only, way to resolve issues of where, when and how files were actually found and when metadata was altered, who altered the metadata and what tools were used to alter the metadata.   The best way, and perhaps only, way to understand which of Tiversa's stories is true (or whether any are true) is through a forensic evaluation of the software used by Tiversa and the artifacts (digital metadata and files) created by the use of that software as reflected in the operating system log files, the Data Store database, and the downloaded files from the various computers and servers.

## III.   ARGUMENT AND CITATION OF AUTHORITY

LabMD seeks a modification of the Court's December 10, 2018 Pretrial Scheduling Order to extend and formally coordinate discovery deadlines to coincide with discovery in the *Qui Tam* and *State Defamation Actions*.   Under Fed. R. Civ. P. 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." "[A] a finding of 'good cause' depends on the diligence of the moving party."   *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir.

2000).  "While diligence is 'the primary consideration,' in determining whether the moving party satisfies the 'good cause' requirement of Rule 16(b), a district court may consider other relevant factors, including any prejudice that may result from the schedule modification."  See Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007).  *Rodriguez v. Athenium House Corp.*, 2012 U.S. Dist. LEXIS 83107, at *5 (S.D.N.Y. June 14, 2012) (citing *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

As shown above, Mr. Daugherty has diligently pursued discovery in this and related lawsuits.  Written discovery requests served on the Tiversa entities and Mr. Boback here were timed to coordinate with Tiversa's document production in the *Pennsylvania I Action*.  A second set of documents requests has been served on the Tiversa entities.  A Rule 30(b)(6) notice of deposition has been served on the Tiversa entities and, along with subpoenas duces tecum and ad testificandum, on the Transportation Security Administration.  The TSA has yet to respond to the subpoenas or the Rule 30(b)(6) notice of deposition due to various delays that are not Mr. Daugherty's fault.  Most significantly, Mr. Daugherty has noticed and attempted to coordinate the depositions of overlapping witnesses yet due to Tiversa's delayed production of documents in the *Pennsylvania I Action* and its subsequent refusal to coordinate depositions, Mr. Daugherty's discovery efforts have been hampered by Tiversa.  Although Tiversa may well claim that a delay in discovery will unduly prejudice it (it won't), such an argument will ring hollow.  Tiversa aggressively sought coordination when it suited Tiversa and then rejected coordination in an obvious effort to unfairly prejudice Mr. Daugherty and LabMD.

Finally, good cause exists for an extension of discovery in order for the parties to coordinate discovery

Because no depositions have been taken in the *State Court Defamation*, *Pennsylvania I* and *Qui Tam Actions,* and because an extension of discovery will allow the depositions of all overlapping witnesses in the three actions to be coordinated with less cost to the parties and less imposition on the witnesses, no party can claim prejudice because of the requested extensions. Moreover, the fact that extensions are needed in order to achieve coordinated discovery in the *Pennsylvania I*, *Qui Tam* and *State Defamation Actions* is, by itself, sufficient good cause to extend the discovery deadlines.

## IV.    CONCLUSION

For each of the aforesaid reasons, Relator Michael J. Daugherty respectfully requests that the discovery deadline in the December 10, 2018 Pretrial Scheduling Order be amended from May 31, 2019 to March 30, 2020, in order to allow eight months of coordinated discovery in the *State Defamation Action*, the *Pennsylvania I Action* and the *Qui Tam Action*.

Dated: May 21, 2019                                       Respectfully submitted,

                                                         **JAMES W. HAWKINS, LLC**

                                                         /s/ *James W. Hawkins*
                                                         James W. Hawkins
                                                         Admitted *Pro Hac Vice*
                                                         Georgia State Bar No. 338767
                                                         JAMES W. HAWKINS, LLC
                                                         5470 Blair Valley Run
                                                         Cumming, GA 30040
                                                         V: 678-697-1278
                                                         F: 678-540-4515
                                                         jhawkins@jameswhawkinsllc.com

                                                         *Attorney for Plaintiff and Relator*
                                                         *Michael J. Daugherty*

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel*. Michael J. Daugherty,<br><br>Plaintiff and Relator,<br><br>v.<br><br>TIVERSA HOLDING CORP., TIVERSA INC., TIVERSA GOVERNMENT INC. and ROBERT BOBACK,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 14-CV-4548-DLC |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 21, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for parties of record electronically by CM/ECF.

/s/ *James W. Hawkins*
James W. Hawkins
Admitted *Pro Hac Vice*
Georgia State Bar No. 338767
JAMES W. HAWKINS, LLC
5470 Blair Valley Run
Cumming, GA 30040
V: 678-697-1278
F: 678-540-4515
jhawkins@jameswhawkinsllc.com

*Attorney for Plaintiff and Relator*
*Michael J. Daugherty*