IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel*. Michael J. Daugherty, | ) | |
| | ) | |
| Plaintiff and Relator, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 14-CV-4548-DLC |
| TIVERSA HOLDING CORP., TIVERSA<br>INC., TIVERSA GOVERNMENT INC.<br>and ROBERT BOBACK, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION

### TABLE OF CONTENTS

I.   Introduction ................................................................................................ 3

II.  Statement of Facts ....................................................................................... 5

   A.  Procedural History ................................................................................ 5

   B.  Without Additional Discovery, Defendants' Discovery Delays Will Severely Prejudice the Government/Relator's Case. ................................................................. 7

     1.  Tiversa's April 9, 2019 Production Was Incomplete ................................ 8

     2.  Tiversa Further Prejudiced Relator by Refusing to Produce Takedown Requests ... 10

     3.  Tiversa's June 14, 2019 Production of Key Documents Was Prejudicially Late ..... 11

     4.  Tiversa's July 3, 2019 Production Remains Incomplete. .......................... 13

     5.  Tiversa Must Review Mr. Boback's Computer and Produce Responsive Documents From It to Avoid Prejudice to Relator. ...................................................... 13

III. Argument and Citation of Authority ................................................................ 14

A.   The Need for Reconsideration ........................................................................ 14

B.   The Court Erred in Finding the Government Would Suffer Undue Prejudice from
     Undue Delay. ................................................................................................. 14

C.   Defendants' Failures to Timely Produce and Supplement Discovery has Prejudiced the
     Government/Relator and Justifies Limited Additional Discovery................................ 15

D.   The Court Should Allow Relator to Amend or Supplement the First Amended
     Complaint..................................................................................................... 18

IV.  Conclusion.......................................................................................................... 25

## I.      INTRODUCTION

Tiversa[1] is seeking to have this Court reward it and punish Relator for Tiversa's dilatory discovery practices.  Tiversa created a time crunch solely by its untimely discovery productions and now seeks to be rewarded for its conduct by opposing reasonable requests for additional discovery and an opportunity to amend the complaint, which is necessitated by Tiversa's late productions.  Because such tactics should not be rewarded and are inconsistent with the Second Circuit's "strong preference" that disputes be resolved on their merits, Relator, standing in the shoes of the United States, respectfully requests that this Court reconsider its refusal to permit additional discovery and the opportunity to amend the First Amended Complaint.

Specifically, Tiversa intentionally waited until two weeks before the close of discovery to produce approximately 5,000 pages of documents to Relator.  Then, on July 3, 2019, five days after discovery closed, Tiversa produced a third set of documents and indicated that it would likely be producing more documents after the Transportation Security Administration completed its review of TSA-related documents in Tiversa's possession.  To date, those documents have not been produced.  To make matters worse, on July 31, 2019, over a month after discovery closed and one day before the Court's final pretrial conference, Mr. Boback disclosed in a letter from his counsel to the Court that he just discovered in his possession his work computer from Tiversa – a computer that had been in storage for over three years. That laptop – the computer of a named party to this lawsuit -- has never been reviewed by Defendants or Relator, and no attempt has been made to determine whether responsive documents and emails exist on it.[2]

---

[1] Defendants Tiversa Holding Corp., Tiversa Inc. and Tiversa Government Inc. are collectively referred to herein as "Tiversa."

[2] In its letter notifying the Court about the laptop, Clark Hill speculates that there is likely nothing different on the laptop because it presumably would have been hooked into Tiversa's server and everything on it included in those backups.  These statements, however, are all entirely speculative,

From both of Tiversa's late productions, Relator has discovered additional facts that further support its claim that Tiversa made fraudulent representations to induce the Transportation Security Administration to enter into a contract with Tiversa and then to extend that contract another year. There is certainly reason to believe that additional discoverable material exists in the yet-to-be-produced TSA documents and in Defendant Boback's unreviewed laptop.

On August 2, 2019, the Court denied Relator's August 1, 2019 oral motion for additional discovery. The motion was made due to late productions by Tiversa and Mr. Boback's revelation about his computer. ECF No. 172. The Court reasoned that an amended complaint and additional discovery necessitated by these late productions would unduly prejudice the government and defendants. In an FCA *qui tam* action like this one, however, the Government is the real party in interest (even where, as here, it declines to intervene in the action). As such, Relator stands in the shoes of and is acting on behalf of the Government. Relator's request for additional discovery and to amend the First Amended Complaint is, in essence, the Government's request to do those things. As such, the Government is harmed not by Relator's request but by the Court's denial of the same.

Additionally, Defendants have not shown (and cannot show) how they would be unduly prejudiced by limited additional discovery and a modest delay in these proceedings. As discussed herein, the law is clear that mere delay and the costs of additional discovery are not, in and of themselves, unduly prejudicial to defendants such that Relator's reasonable requests can properly be denied. Further, as discussed more fully herein, where a party has been the cause of the delay

---

as Clark Hill itself makes clear. Specifically, they inform the Court that the laptop is being imaged and that no one has, in fact, reviewed its contents to determine whether there are or are not any documents, emails, or other information that was not contained on Tiversa's servers either because the laptop was not, for example, hooked into the system at the time or because the information is otherwise stored on the computer's hard drive. Ostensibly for these reasons, Clark Hill is careful to make clear that they are guessing or speculating as to what is on the laptop but that, in fact, they have no actual knowledge as to what, if anything, the laptop contains.

and/or additional discovery of which they complain, the courts have been unsympathetic to such parties.

For all of these reasons, Relator seeks reconsideration of the Court's August 2, 2019 Order.

## II.     STATEMENT OF FACTS

### A.     Procedural History

This *qui tam* action began on June 24, 2019, when Michael J. Daugherty ("Relator") filed a complaint on behalf of the federal government.[3]  On March 16, 2018, almost four (4) years later, the government filed a Notice of Election to Decline Intervention.[4]  ECF No. 33.

Tiversa and Defendant Robert Boback filed motions to dismiss on July 3, 2018.  ECF Nos. 59 and 61.  Relator filed a first amended complaint ("FAC") on July 27, 2018.  ECF No. 72.

---

[3] Under 31 U.S.C. §3730, "A person may bring a civil action for a violation of section 3729 for the person and for the United States Government."

[4] Defendants have repeatedly underscored the government's decision not to intervene as if the Court should infer that Relator's case is not meritorious.  In *United States ex rel. Feldman v. van Gorp*, 2010 U.S. Dist. LEXIS 73633, at *5-7 (S.D.N.Y. July 8, 2010), the court explained why the government's decision not to intervene is no indication of the merits of the claim:

> Because the government "may have a host of reasons for not pursuing a claim," courts "do not assume that in each instance in which the government declines intervention in an FCA case, it does so because it considers the evidence of wrongdoing insufficient or the qui tam relator's allegations [of] fraud to be without merit." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 n.17 (11th Cir. 2006); see also *United States ex rel. DeCarlo v. Kiewit/AFC Enters*., 937 F. Supp. 1039, 1047 (S.D.N.Y. 1996) ("[N]on-intervention does not necessarily signal governmental disinterest in an action."). "[T]he plain language of the Act clearly anticipates that even after the Attorney General has 'diligently' investigated a violation [of the FCA], the Government will not necessarily pursue all meritorious claims." *United States ex rel. Berge v. Bd. of Trustees*, 104 F.3d 1453, 1458 (4th Cir. 1997), cert. denied, 522 U.S. 916, 118 S. Ct. 301, 139 L. Ed. 2d 232 (1997). "[O]therwise there is little purpose to the qui tam provision permitting private attorneys general." *Berge*, 104 F.3d at 1458; see also *United States ex rel. El-Amin v. George Washington Univ*., 533 F. Supp. 2d 12, 21 (D.D.C. 2008) (assuming non-intervention is relevant to merits of relator's claims "would seem antithetical to the purpose of the qui tam provision--to encourage private parties to litigate on behalf of the government").

Tiversa and Mr. Boback thereafter moved to dismiss the FAC.  ECF Nos.  75 and 77.  On October 17, 2018, this Court denied the motions as to Counts Three and Four (regarding the TSA Contract) and granted the motions as to Counts One and Two (regarding the DHS Grant).  ECF No. 85.  As to Counts Three and Four, the Court found:

> The FAC contains adequate allegations of a factual falsity in the defendants' procurement of the TSA Contract. The FAC alleges that Boback sought to obtain money from the Government in exchange for Tiversa's services. The FAC further alleges that Boback presented a document to the TSA that he knew was false, namely a report prepared at Boback's direction that misrepresented the IP address associated with a TSA file found on a peer-to-peer file sharing application. These allegations plausibly allege a violation of the FCA.

> The FAC also pleads fraud with particularity. The FAC specifies that the fraudulent statement was a Tiversa report that falsified the IP address at which a TSA file was found. The specific false statements in the report were (1) that the TSA file was "spreading through peer-to peer networks" and (2) that the TSA file had been "found on computers in foreign countries." The speaker is identified as Boback. The statement was conveyed to TSA employees at a meeting that occurred in Arlington, Virginia in "late spring or summer of 2011." These allegations are specific enough to pass muster under Rule 9(b).

The Pretrial Scheduling Order, filed on December 10, 2018, states that no additional parties may be joined or pleadings amended after January 11, 2019, and that fact discovery must be completed by May 31, 2019.  *Id*.

On May 21, 2019, Relator simultaneously filed in this action and in a related action in the Western District of Pennsylvania, motions to extend the discovery deadline and for a discovery coordination order.  ECF Nos. 108 and 110.  Relator explained in a letter to both courts dated May 22, 2019, that (1) in another related action, in the Allegheny County Court of Common Pleas, the court had ordered that discovery in the three actions be coordinated; (2) efforts to coordinate discovery in the three actions (as requested by Tiversa in two of the actions, including this one) had failed; and (3) Relator simultaneously filed the motions in both courts to achieve coordinated discovery in all three cases.  ECF No. 114.  The Court in the Western District of Pennsylvania

denied the motion for a discovery coordination order and extended discovery the discovery deadline in that case by one month - until July 1, 2019.  Relator thereafter requested this Court to extend the May 31, 2019 discovery deadline here to coincide with the new July 1, 2019 discovery deadline in the Western District of Pennsylvania.  ECF No. 118.  By Order dated May 31, 2019, this Court extended the discovery deadline to June 28, 2019, but only for those depositions timely noticed or to which the parties consent.  The Court also postponed the parties' deadline for filing the Joint Pretrial Order until July 12, 2019.  ECF No. 122.  A proposed Joint Pretrial Order was filed on July 12, 2019.  ECF No. 142.

Due to the July 31, 2019 revelation by Mr. Boback that, after more than three years, he had just realized that he had possession of his work computer from Tiversa and the late production of documents by Tiversa (with the prospect of more documents still to come), Relator made an oral motion at the final pretrial conference on August 1, 2019, for limited discovery and to postpone the August 27, 2019 trial date.  By order dated August 2, 2019, the Court denied Relator's request based on the Court's position that a further amendment of the complaint "would unduly delay this litigation and unfairly prejudice the defendants and the government."  ECF No. 172 at 3.

**B.      Without Additional Discovery, Defendants' Discovery Delays Will Severely Prejudice the Government/Relator's Case.**

On March 6, 2019, Relator served his first interrogatories and first requests for production of documents on Tiversa.  Exhibits A and B hereto are true and correct copies of those requests.[5]

---

[5] No written discovery was served on Mr. Boback in this action because (1) Mr. Boback was terminated from Tiversa approximately three years earlier and (2) in related litigation in the Western District of Pennsylvania, Mr. Boback responded to documents interrogatories and document requests there by noting that he was not in possession, custody or control of documents from the time when he was employed by Tiversa.  Of course, Clark Hill's July 31, 2019 letter to the Court demonstrates that these assertions were, in fact, incorrect.

Tiversa responded to those requests on April 4, 2019.  Exhibits C and D hereto are true and correct copies of Tiversa's responses.

### 1.       Tiversa's April 9, 2019 Production Was Incomplete.

Tiversa produced 5043 pages of documents on April 9, 2019, in response to Relator's March 6, 2019 discovery requests.  Late productions made by Tiversa on June 14, 2019, and July 3, 2019, prove that Tiversa's April 9, 2019 production was vastly incomplete.

To put Tiversa's late productions in context, and to demonstrate the cumulative prejudice caused, we start with Tiversa's original production on April 9, 2019.  Among the documents produced were 104 reports or "tickets" Tiversa sent to the TSA throughout the course of Tiversa's relationship with the TSA.  Each ticket references one or more TSA-related files Tiversa supposedly found on P2P networks ("TSA-Related Files").  *See, e.g.*, p. 1 of Exhibit E hereto listing 17 TSA-Related Files.  *No* TSA-Related Files were produced on April 9, 2019.

Several of Tiversa's delinquently-produced documents support Relator's belief that the TSA-Related Files were not found when and where Tiversa represented to the TSA.[6]  For example, in an August 15, 2011 email from Keith Tagliaferri to Mike Carulli, James Tormasi and Orion Czarnecki (all Tiversa employees), Mr. Tagliaferri stated,  "Ops – For TSA – please begin creating tickets for the backlog of results that we have.  I would try to send out 4-5 tickets per day.  This should be a high priority."  In other words, Mr. Tagliaferri was directing his ops team to pull and feed old files to the TSA on a consistent basis while representing that they were still available on P2P networks.  In addition, in Exhibit F (a screenshot of a listing of the titles of the TSA-Related Files delinquently produced by Tiversa on July 3, 2019), many of the TSA-Related Files are dated

---

[6] TSA-Related files were specifically requested by Relator on March 6, 2019 (*see*, *e.g*., Document Request No. 14 and definition of "Other Files" in Exhibit B hereto.)

in 2004, 2005 and 2006 - several years before Tiversa's August 3, 2011 contract with the TSA. The early dates on the TSA-Related Files and Mr. Tagliaferri's August 15, 2011 email correspond with the deposition testimony of former Tiversa employee and whistleblower Richard E. Wallace that many of the files Tiversa presented to the TSA were found long before the contract with the TSA was consummated. *See* Exhibit G hereto (June 26, 2019 Tr. of Wallace at 22:20 through 23:21 and 51:19 through 52:5). The misrepresentations regarding when and where Tiversa found the TSA-Related Files are key to Relator's claim that Tiversa fraudulently induced the TSA to extend the contract an additional year.

Because Relator did not have any TSA-Related Files before the June 28, 2019 close of discovery, however, Relator could not ask Mr. Wallace about them at his June 26, 2019 deposition nor could he ask Mr. Boback about them at his June 25, 2019 deposition. Moreover, Tiversa's late production of TSA-Related Files prevented Relator from being able to timely serve follow-up written discovery on those files and from taking depositions of other witnesses about those files (to ask, *e.g.,* who found them and how, when and where they were found).  If Relator had the TSA-Related Files, Mr. Wallace could have identified which were stale, and Mr. Boback would have been asked to state his position on that issue.

In addition, although Tiversa belatedly produced several TSA-Related Files on July 3, 2019, it failed to produce *any* of the documents related to those files at that or any other time. Such documents were specifically requested on March 6, 2019, as shown in the following requests:

15. Please produce all documents identifying who at Tiversa downloaded the Subject

File[7] [and] Other Files[8]….

16. Please produce all documents identifying when Tiversa downloaded the Subject File [and] Other Files….

17. Please produce all documents indicating how Tiversa located the Subject File [and] Other Files…(*e.g.*, search terms, browsing the host).

20. Please produce all documents showing the true IP address(es) of all computer(s) that Tiversa accessed to download the Subject File [and] Other Files….

*See* Exhibit B.  The requested documents would help prove whether or not the TSA-Related Files were stale and, therefore, whether Tiversa made material misrepresentations to the TSA in the course of obtaining, extending and/or performing its contract.  Relator should have had these documents (and the documents that remain to be produced) well before the close of discovery.

## 2.     Tiversa Further Prejudiced Relator by Refusing to Produce Takedown Requests.

Each of the 104 tickets produced by Tiversa on April 9, 2019, contains the following statement: "Takedown Request (Takedown request issued to the ISP hosting the disclosure source IP address)."  Tiversa to date has failed to produce any of the actual takedown requests that it allegedly sent to ISPs.  Relator was entitled to and needed to review those takedown requests (1) because they would have included true IP addresses of the TSA-Related Files and (2) to confirm whether Tiversa actually made the takedown requests.  If, as Relator suspects, Tiversa did not

---

[7] "Subject File" is defined in Exhibit B to mean "the file or files Tiversa obtained in or around 2011 relating to aircraft computers that Tiversa gave to and/or discussed with the TSA before the TSA Definitive Contract. "Subject File" includes all versions of the Subject File, including, without limitation, any alterations made by Tiversa to the metadata of the Subject File."

[8] "Other Files" is defined in Exhibit B to mean "any file or files other than the Subject File that Tiversa provided to the TSA either before it entered into the TSA Definitive Contract or during its performance under that agreement and the TSA Definitive Contract Extension. "Other Files" include all versions of the Other Files, including, without limitation, any alterations made by Tiversa to the metadata of the Other Files."

make these takedown requests, these fictional documents would be further material evidence of fraud in the inducement and performance of the TSA contract.

On June 22, 2019, Relator requested an informal conference on this and other discovery failures by Tiversa.  ECF No. 126.  By Order dated June 26, 2019, the Court denied Relator's request for the takedown requests stating that an "endorsement of June 7, 2019 previously denied Relator's request for substantially the same documents the Relator seeks in his June 22 letter."  It appears the Court was referring to its April 26, 2019 Order (ECF No. 107) in which the Court simply stated, "Relator's request for a conference is denied.  Tiversa has no duty to obtain discovery from its former employees in response to relator's demands."  Relator's April 22, 2019 request to which that ruling referred (ECF No. 105), however, did not request takedown notices.  Indeed, the parties did not even meet and confer on the takedown notices until weeks later.  Moreover, the takedown requests would be in Tiversa's own possession, custody or control, not that of a third party.  Tiversa has not provided any legitimate reason for not producing these documents.

### 3.      Tiversa's June 14, 2019 Production of Key Documents Was Prejudicially Late.

On June 14, 2019, two weeks before the close of discovery, Tiversa produced 4,779 additional pages of documents in response to Relator's original March 6, 2019 document requests.  To this day, Tiversa has given no reason for producing these documents over two months late.[9]

This late production turned out to be important – the documents it contained told a different story about witnesses and misrepresentations by Tiversa to the TSA.  In its April 9, 2019

---

[9] Tiversa's last minute production of documents here is consistent with Tiversa's delinquent production of documents in the related Western District of Pennsylvania litigation where Tiversa waited until shortly before discovery closed to produce documents to LabMD (Relator's company).  *See* ECF No. 109 at 2 and 10.

production, for example, Tiversa produced a total of five (5) emails to, from or cc'ed to Mr. Boback.  The dearth of Boback emails in this production gave the impression that Mr. Boback had little involvement in the representations to and negotiations with the TSA.

In the June 14, 2019 production, however, over thirty (30) emails to, from or cc'ed to Mr. Boback were produced.  They show that Mr. Boback was extensively involved in the 2010 and 2011 meetings with the TSA, conference calls and negotiations with the TSA, internal discussions regarding takedown requests for the TSA and changes made in proposals Tiversa presented to the TSA.  Exhibit H hereto is a compilation of many of those emails.  In addition, the second production includes many more documents relating to misrepresentations Tiversa made to the TSA including, for example, the original document Tiversa used as the foundation for its proposals to the TSA, draft statements of work from May and June 2010, a draft of the July 2011 statement of work, drafts with highlighting, emails relating to the drafts, Mr. Tagliaferri's August 15, 2011 email (discussed above) and a slide presentation given at the August 2011 kick-off meeting at Tiversa.  The slide presentation repeats and elaborates on several of the misrepresentations Relator's counsel described to the Court at the final pretrial conference on August 1, 2019, and several more.  *See, e.g*., TIVSDNY-009608 and TIVSDNY-9616 in Exhibit I hereto, which is a true and correct copy of that presentation.

The late production of these documents prevented any meaningful follow-up discovery on them or the subject matters they raised, whether through deposition or written discovery.  And, if the current August 2 Order is not reconsidered, this late production will have successfully allowed Tiversa to evade legal responsibility for additional acts of fraud against the United States.

### 4.        Tiversa's July 3, 2019 Production Remains Incomplete.

As mentioned above, on July 3, 2019, after discovery closed, Tiversa produced additional documents in response to Relator's March 6, 2019 document requests.  According to Tiversa's counsel, these documents were produced after the TSA gave Tiversa permission to produce the documents.  Tiversa's counsel further explained that the TSA is continuing its review of documents to produce to Relator.  *See* Exhibit J hereto.  Tiversa, therefore, has *still* not completed its production of documents to Relator.

### 5.        Tiversa Must Review Mr. Boback's Computer and Produce Responsive Documents From It to Avoid Prejudice to Relator.

On July 31, 2019, just before the August 1, 2019 final pretrial conference, counsel for Mr. Boback notified the Court that Mr. Boback had just discovered his work computer – a computer that (1) belonged to him personally; (2) was used by Mr. Boback in his work at Tiversa; (3) was probably connected to the Tiversa network until Mr. Boback left the company; (4) contains emails from Mr. Boback's email account at Tiversa; and (5) had been in storage for over three years – ever since Mr. Boback's departure from Tiversa in 2016.  Mr. Boback's counsel has arranged for a forensic copy of the hard drive on that computer to be made, but no review of its contents has been made by Tiversa or Boback.

While counsel for Mr. Boback speculates in his letter to the Court that there is unlikely to be anything on that laptop that is not redundant of what has already been produced, he is also forced to admit, in all candor, that Mr. Boback's counsel have not reviewed the computer and that they cannot make any actual representations as to what is or is not on Mr. Boback's work laptop. No one can know what is on Mr. Boback's computer until the hard drive is dutifully examined. There may be documents and emails that Mr. Boback saved to his hard drive or preserved in his cache that were never stored on the Tiversa network, that were deleted from the Tiversa network

or that were not uncovered by prior searches by Tiversa. A diligent search of the hard drive is the only way to determine whether discoverable documents exists that must be produced by Tiversa (because Tiversa owns the data) and Mr. Boback (because Mr. Boback possesses the computer). Relator is entitled to have that computer reviewed by appropriate counsel for an actual, fact-based determination to be made whether responsive, non-privileged information exists on this named defendant's work computer. All parties to this litigation must concede that this exercise has not been done. Relator was in no way responsible for Mr. Boback's eleventh-hour discovery of this important laptop, and he should not be prejudiced because of the timing of its disclosure.

## III.   ARGUMENT AND CITATION OF AUTHORITY

### A.   The Need for Reconsideration

Relator has identified new evidence, has in this motion his first opportunity to present controlling case law, and reconsideration is needed to prevent manifest injustice. As such, Relator respectfully requests that the Court reconsider its August 2, 2019 Order.

### B.   The Court Erred in Finding the Government Would Suffer Undue Prejudice from Undue Delay.

In a *qui tam* action, a relator brings an action on behalf of the government. Under 31 U.S.C. §3730, "[a] person may bring a civil action for a violation of section 3729 for the person and for the United States Government." The federal government is the real party in interest in cases brought under the False Claims Act. *United States ex rel. Eisenstein v. City of N.Y.*, 556 U.S. 928, 930, 129 S. Ct. 2230, 2232 (2009). Even where the government chooses not to intervene, the relator proceeds with the action on the government's behalf. *See id*. at § 3730(c)(3). *United States ex rel. Drake v. Norden Sys.*, 375 F.3d 248, 251 (2d Cir. 2004).

Instead of suffering prejudice, the Government would likely gain if Relator is permitted limited discovery. If that discovery leads to a recovery, then the United States, as the real party in

interest, will benefit to a greater degree than the Relator because Relator's share is limited to a maximum of 30%. 31 U.S.C. § 3730 (d)(2). And if the discovery does not lead to a recovery then the United States will suffer no prejudice.

### C.     Defendants' Failures to Timely Produce and Supplement Discovery has Prejudiced the Government/Relator and Justifies Limited Additional Discovery.

The grounds for Relator's request for additional discovery are (1) Tiversa's delayed and still incomplete production of documents and (2) Mr. Boback's July 31, 2019 revelation that he possesses his work computer. Specifically, Tiversa delayed production of relevant documents until June 14, 2019, two weeks before discovery closed and July 3, 2019, five days after discovery closed. And only two weeks ago, on July 31, 2019, did the Court and Relator learn for the first time that Mr. Boback, a named party, has possession of his work computer which has not been searched or reviewed by anyone for responsive discovery. Defendants have been the sole cause of their delays and cannot now fairly be heard to complain about the costs or time associated with a limited extension of discovery necessary to redress their delinquent productions.

The Court denied Relator's oral request for additional discovery based on its finding that, "a further amendment of the complaint in this action would unduly delay this litigation and unfairly prejudice the defendants and the Government."[10] When viewed in the larger context of this case and with reference to governing case law, however, the facts and the law counsel in favor of discovery being reopened here for a limited purpose.

A trial court has wide latitude to limit discovery but cannot do so where it affects a party's substantial rights. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008) (citing

---

[10] As addressed in greater detail herein, this rationale is also not an appropriate ground for denying a leave to amend the complaint.

*Long Island Lighting Co. v. Barbash*, 779 F.2d 793, 795 (2d Cir. 1985)).  "A party must be afforded a meaningful opportunity to establish the facts necessary to support his claim."  *Id.*  Due to Tiversa, Mr. Boback and the TSA's delays, Relator was not given that meaningful opportunity.  Relator, acting on behalf of the United States, seeks additional discovery to pursue his fraud claims based on facts that he discovered after the amendment cut-off date, including facts that Tiversa revealed in its late productions on June 14, 2019 and July 3, 2019.  Relator believes these facts will, apart from those in the FAC, support fraud claims.  To deprive Relator of an opportunity to prove these facts, therefore, negatively affects Relator's substantial rights.

Specifically, here, a party answering discovery requests "has an affirmative duty to furnish any and all information available to the party."  Importantly, that supplementation must be *timely*.  *Simo Holdings Inc. v. H.K. Ucloudlink Network Tech., Ltd*., 354 F. Supp. 3d 508, 510 (S.D.N.Y. 2019).  A party cannot make a partial production of documents and wait to sandbag an opponent with a last minute production, as Tiversa did here.  Litigants have a duty to supplement their discovery responses on a *timely* basis.  *Simo Holdings Inc. v. H.K. Ucloudlink Network Tech., Ltd*., 354 F. Supp. 3d 508, 510 (S.D.N.Y. 2019).  The duty of supplementation on a timely basis is clearly set forth in Fed. R. Civ. P. 26(e):

> (e) Supplementing Disclosures and Responses.
>> (1) In General. A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>>> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>>> (B) as ordered by the court.

The "duty to supplement arises when the [party] subsequently learns of information that was previously unknown or unavailable, and the new information renders the earlier report

incomplete or inaccurate." *Lewis v. FMC Corp.*, 786 F. Supp. 2d 690, 705 (W.D.N.Y. 2011).  The duty to supplement is not limited to newly acquired information – "it also extends to information that 'was not originally provided although it was available at the time of the initial disclosure or [discovery] response.' See 2007 Advisory Committee Note to Fed. R. Civ. P. 26(e). *Am. Friends of Yeshivat Ohr Yerushalayim, Inc. v. United States*, No. 04-CV-1798 (CPS), 2009 U.S. Dist. LEXIS 47986, at *25 (E.D.N.Y. June 9, 2009).

The need to supplement on a timely basis is so important that "[a] party's failure to supplement an earlier discovery response is sanctionable under Rule 37(c)." Patrick E. Higginbotham, 6-26 Moore's Federal Practice - Civil § 26.132. (2010 Matthew Bender & Company, Inc.) (citing caselaw) (quoted in *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 74 (W.D.N.Y. 2011);  "The purpose of [Rule 37(c)] is to prevent the practice of 'sandbagging' an adversary with new evidence." *Ventra v. United States*, 121 F.Supp.2d 326, 332 (S.D.N.Y. 2000) (citing *Johnson Elec. N.A. v. Mabuchi Motor Am. Corp.*, 77 F.Supp.2d 446, 458 (S.D.N.Y. 1999)).

To adjust for and cure late disclosures, courts will often reopen discovery to allow a party to conduct additional discovery relating to untimely disclosures.  *See, e.g.,  Coene v. 3M Co.*, 303 F.R.D. 32, 45 (W.D.N.Y. 2014); *Lee Valley Tools, Ltd. v. Indus. Blade Co.*, 288 F.R.D. 254, 262 (W.D.N.Y. 2013); Robbins & Myers, Inc. v. J.M. Huber Corp., 274 F.R.D. 63, 73–74 (W.D.N.Y. 2011) (reopening discovery as a sanction under Rule 37 for late production by one party); *Casagrande v. Norm Bloom & Son, LLC*, No. 3:11 - CV - 1918 (CSH), 2014 U.S. Dist. LEXIS 158752, at *35 (D. Conn. Nov. 10, 2014).  The Court should not hesitate to do so here, where Tiversa (1) provided discovery two months late, (2) provided additional discovery after the close of discovery, (3) has indicated that its production is still not complete, and (4) has not reviewed its

data on Mr. Boback's work laptop.  To force Relator to trial under these circumstances without the ability to correct for these discovery abuses would adversely affect Relator's substantial rights.

### D.    The Court Should Allow Relator to Amend or Supplement the First Amended Complaint.

Relator, on behalf of the United States, the real party in interest in this litigation, requests that this Court reconsider its August 2, 2019 Order[11] denying Relator leave to amend or, at the very least, to supplement,[12] its Amended Complaint to add factual allegations only recently discovered in late-produced discovery by Defendants.  Specifically, LabMD seeks to add that the following are additional misrepresentations that induced Tiversa either to enter into the original contract or the extension to the contract:[13]

> 1.    In an August 15, 2011 email from Keith Tagliaferri to Mike Carulli, James Tormasi and Orion Czarnecki, Mr. Tagliaferri directed the "Ops" team to provide TSA files it had already discovered: "Ops – For TSA – please begin creating tickets for the backlog of results that we have.  I would try to send out 4-5 tickets per day.  This should be a high priority."

---

[11] Neither Relator nor Defendants were given the opportunity to brief this legal issue before the Court entered its Order denying leave to amend.  As such, this motion is the first opportunity the parties have had to brief this issue.

[12] Under Rule 15(d), courts in this jurisdiction have allowed complaints to be supplemented with additional facts learned through the discovery.  *Kleberg v. Eber*, Case No. 16-CV-9517, 2019 WL 2223272, *8 (S.D.N.Y. May 23, 2019).  Under Rule 15(d), leave to file a supplemental pleading should be freely permitted when, like here, the supplemental facts connect it to the original pleading.  *Id.*  Unlike amendments under Rule 15(a), supplementation under Rule 15(d) does not require a showing of good cause for the Court to permit supplementation.  *Beckett v. Inc. Vill. of Freeport*, Case No. CV 11-2163, 2014 WL 1330557, at *6 (E.D.N.Y. Mar. 31, 2014) ("[A] party seeking to supplement pleadings under Rule 15(d) is not required to demonstrate "good cause" under Rule 16(b)(4) since this latter provision pertains solely to motions to *amend*—not motions to *supplement* pleadings.)  The same undue prejudice inquiry applies under both rules, however.  *Id.* at *7.    For the reasons set forth herein, no undue prejudice has been demonstrated by Defendants.  If the Court declines to allow Relator to amend the current Complaint, Relator requests in the alternative that it be allowed to supplement the Complaint under Rule 15(d).

[13] Assuming discovery is reopened as requested, Relator may well have additional statements or facts that need to be added to the Complaint at that time as well.

2.      In a June 22, 2012 email from James Tormasi to Mike Carulli, Mr. Tormasi explains that "in the event there are not tickets for TSA," he placed two tickets in a share drive.  *See* Exhibit K.

3.       In a slide presentation, "[Tiversa] Connects to over **20 million** P2P users at any given **<u>second</u>**."

4.      In a slide presentation, "[Tiversa] Downloads an average of **100,000** documents **<u>per day</u>** on the P2P networks."

5.      In a slide presentation, [Tiversa] Has detected over **28 million** SSNs on the P2P networks.

6.      In a slide presentation, "[Tiversa] Records an average of **<u>1.6 billion searches per day</u>** on the P2P networks.

7.      In a slide presentation, "[Tiversa] Downloaded over 33 million exposed document files (xls, doc, ppt, pdf, etc.) from the P2P file-sharing networks within a **<u>twelve month period</u>**.

8.      In a slide presentation, "Tiversa's Patented Technology: Ability to view the P2P networks in their *entirety*" and "Tiversa Technology Connected to Entire Network."

9.      In several documents prepared for the TSA, "Worldwide peer-to-peer (WW P2P) file sharing networks are primarily used for sharing music, movies, and software. Unfortunately, they also commonly expose confidential and sensitive government, corporate and consumer documents. Employees, suppliers, contractors, agents, partners, and customers inadvertently disclose millions of confidential and sensitive documents on the WW P2P file sharing networks each year.  Once disclosed, these documents are publicly available to any individual using one of the 2,600+ different WW P2P file sharing programs, all of which are free and readily available.  Disclosed files are routinely accessed by identity thieves, cyber criminals, terrorists, competitors, the media, shareholders, and others."

10.      In several documents prepared for the TSA, "It must be emphasized that WW P2P file sharing networks are not part of the World Wide Web.  WW P2P file sharing networks are an entirely separate, internet-based network with unique searches, files, and users. The WW P2P is extremely large. In fact, more users search the WW P2P for information than the World Wide Web, with over 1.8 billion searches per day occurring on the P2P networks.  It is also estimated that over 500 million users have file sharing applications, and internet service providers have stated that 70% of internet traffic is consumed solely by P2P networks."

11. In several documents prepared for the TSA, "Tiversa's unique value is in its privileged position to see and access the entire WW P2P in real-time. Similar to how Google has indexed the World Wide Web, Tiversa has "centralized" the notoriously "decentralized" WW P2P file sharing networks."

12. In several documents prepared for the TSA, "Tiversa has the ability to detect and record all user-issued P2P searches, access and download all files available on the WW P2P networks, determine the actual disclosure source of documents, track the spread of files across the entire WW P2P networks, and remediate any P2P file disclosure."

13. In several documents prepared for the TSA, "While an individual using a P2P application can typically connect to no more than 3,125 other users, Tiversa's patented systems can connect virtually to all P2P users (typically up to 25 million users at any one time) in real-time, 24x7x365. Due diligence performed by various government agencies, law enforcement, strategic partners, current enterprise-level customers, industry leaders, and extensive patent searches in support of Tiversa's patents have all confirmed that Tiversa is the only firm known to possess these capabilities."

14. In several documents prepared for the TSA, "Some or all of the documents Tiversa produced on July 3, 2019 were not found by Tiversa during the contract yet they were represented to have been found during the term of the contract."

The permissive standard for amendment of a Complaint under Rule 15(a)(2), which requires that leave to amend be freely given, is "consistent with [the Second Circuit's] strong preference for resolving disputes on the merits." *Kleberg v. Eber*, Case No. 16-CV-9517, 2019 WL 2223272, *6 (S.D.N.Y. May 23, 2019) (quoting *Williams v. Citigroup, Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011)). The Supreme Court has also held that amendment should normally be allowed and that refusal to grant leave without justification is "inconsistent with the spirit of the Federal Rules . . . ." *Forman v. Davis*, 371 U.S. 178, 182 (1962).

When leave to amend is sought after the deadline provided for the same in the Scheduling Order, the mandates of Rule 15(a)(2) must be balanced with Rule 16's provision that a scheduling order can be modified for good cause. *Id.* at *7. Both rules, however, must be considered and applied. *Olaf Soot Design, LLC v. Daktronics, Inc.*, 299 F. Supp. 3d 395, 397 (S.D.N.Y. 2017)

("Tension between the mandates of Rules 15 and 16 has been noted by courts in this circuit, and fulfilling both requires considering, as relevant here, affording justice to a plaintiff, a plaintiff's good cause and diligence in seeking the amendment, and potential prejudice to the defendant . . . .") (internal citations and quotations omitted).

Whether good cause exists generally turns on the moving party's diligence, *id.*,[14] though "a district court has discretion to grant a motion to amend even where the moving party has not shown diligence in complying with a deadline for amendments in a Rule 16 scheduling order." *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 176 (S.D.N.Y. 2015). A party shows the required diligence when it can "demonstrate that the applicable deadline could not have been reasonably met." *Id.* (quoting *Perfect Pearl Co., Inc. v. Majestic Pearl & Sons, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012)).  In cases, like this one, where the information sought to be added into the amended complaint was not discovered prior to the applicable amendment deadline in the Scheduling Order, courts have also examined whether the moving party acted diligently after discovering the information.  *See, e.g., Enzymatic Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010).

Here, Relator easily satisfies both diligence inquiries.  First, the deadline for amendment set by the Scheduling Order in this case was January 11, 2019.  Tiversa's first production of documents was on April 9, 2019.  As such, Relator could not have moved to amend its Complaint with any information produced in discovery by the January 11, 2019 deadline.

Compounding the problem, Tiversa produced approximately 5,000 more pages of documents on June 14, 2019, two weeks before discovery closed.  But even that production was incomplete.  On July 3, 2019, Tiversa produced more documents and indicated it may be producing

---

[14] *See also Kassner v. 2d Avenue Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007)

more documents after the TSA completed its review of files.  In any event, Relator could not have moved by January 11, 2019 to amend the Amended Complaint to factual allegations from discovery produced in June 2019 or later.

Second, Relator exercised diligence in moving to amend the Amended Complaint after discovery of the information.  Indeed, less than 2 months have passed since Tiversa's June 14, 2019 production.  Many district courts have determined that 2 months, and indeed much longer periods, are sufficiently diligent.  *See, e.g., Enzymatic Ltd.*, 754 F. Supp. 2d at 537 (where delayed discovery deferred plaintiff's ability to discover facts, plaintiff acted diligently by seeking leave to file an amended complaint only 2 months after acquiring information);  *Olaf Soot Design, LLC v. Daktronics, Inc.*, 299 F. Supp. 3d 395, 398-99 (S.D.N.Y. 2017) (finding that filing to amend complaint within a few months of discovery of the relevant information in discovery was diligent); *Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc.*, 283 F.R.D. 142, 148-49 (S.D.N.Y. 2012) (finding diligence and allowing amendment filed two months after facts learned in discovery); *Estrada v. City of Nassau*, Case No. 05-CIV-1821, 2010 WL 2218802, * 1 (E.D.N.Y. May 28, 2010 (allowing amendment two weeks before trial while summary judgment motions were pending); *Moroughan v. County of Suffolk*, 99 F. Supp. 3d 317, 324 (E.D.N.Y. 2015) (finding that where plaintiff did not discover facts to be added to the amended complaint until after the deadline set by the scheduling order, filing leave to amend 9 months after discovery of the information was sufficiently diligent); *Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 333 (2d Cir. 2000) (affirming grant of motion to amend after seven-year delay where defendant did not show prejudice).  The Second Circuit has even explicitly allowed amendments to a complaint on the eve of trial, after the completion of discovery, and after defendant filed a motion for summary judgment.  *See, e.g., Hamlin v. Michelson*, 794 F. 2d 834 (2d Cir. 1986).

Realtor having established the required diligence, the burden shifts to Defendants to demonstrate that they will be unduly prejudiced by the proposed amendment, a burden that Defendants here cannot meet. *Kleeberg*, 2019 WL 2223272 at *9 (citing *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 43 (2d Cir. 1979)). When considering prejudice, courts consider whether the proposed amendment will (1) require the defendants to spend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the plaintiff from bringing a timely action in another jurisdiction. *Id.* at *7. Courts also caution, however, that "[*m*]*ere delay*…, absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." *Id.* (internal citations and quotations omitted) (emphasis added). And, "allegations that an amendment will require the expenditure of additional time, effort, or money do not themselves constitute prejudice." *Christians of Cal., Inc. v. Clive Christian N.Y., LLP*, 2014 WL 3605526, *5 (S.D.N.Y. July 18, 2014).

Here, Relator does not seek at this point to add an additional theory of liability - instead, the additional facts sought to be added to the current complaint are simply additional factual support for the same legal theories already present in the Amended Complaint (fraudulent inducement and false statements). And even if these facts did (or additional facts learned in reopened discovery do) create a new theory of liability, "[i]t is well established that merely defending against a new theory is not prejudicial." *Id.* (internal citations and quotations omitted).

In its August 2 Order, the Court relied upon the additional discovery that would need to be conducted regarding these additional allegations to determine that the requested amendment would unduly prejudice defendants. But "allegations that an amendment will require the expenditure of additional time, effort, or money do not themselves constitute prejudice." *Christians of Cal., Inc.*,

2014 WL 3605526, *5.  Indeed, "the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading."  *United States ex rel. Mar. Admin. V. Cont'l Ill. Nat'l Bank & Tr. Co. of Chi.*, 889 F.2d 1248, 1255 (2d Cir. 1989).

Additionally, where, as here, Defendants' delay in producing discovery is the cause of the delay in the proceedings, courts have declined to find prejudice or otherwise punish the plaintiff for the defendant's dilatory discovery practices.  *See, e.g., Saint-Jean v. Emigrant Mortgage Co.*, 50 F. Supp. 3d 300, 326 (E.D. N.Y. 2014) (finding no undue prejudice and allowing leave to amend in part because defendant was largely responsible for the delay of which they complained because of their delays in producing discovery and in complying with timely requests to produce discovery); *Enzymatic Ltd.*, 754 F. Supp. 2d at 537 (where delayed discovery deferred plaintiff's ability to discover facts, plaintiff allowed to amend complaint).[15]

Applying the mandates of both Rule 15(a) and Rule 16, as interpreted and applied by the courts in this Circuit through case law, Relator's request to amend the current complaint should be granted.[16]  Alternatively, Relator should be permitted to supplement the current Amended Complaint to add the information.

---

[15] The Court also mentions in its August 2 Order that the Government would be unduly prejudiced by delay.  As noted above, however, the Government is the real party in interest in this litigation; Relator merely stands in the Government's shoes.  As such, prejudice to the Relator is prejudice to the Government.  And reopening discovery and allowing an opportunity to amend the Amended Complaint serves, rather than prejudices, the Government's interests.

[16] While Relator will comply with whatever procedure the Court instructs with regard to the filing of the Second Amended Complaint, it is not likely required that it be filed under seal.  *United States ex rel. Halegoua v. Kleinberg*, Case No. 14-CV-3943(JS)(SIL), 2016 WL 4179944, at *2 (E.D.N.Y. Aug. 5, 2016) ("Although the Second Circuit has not addressed whether the requirement to file the 'complaint' under seal under 31 U.S.C.§ 3730(b) also applies to the Amended Complaint, 'district courts have generally found that when an amended complaint makes similar allegations of fraud, *resealing* is not required.'") (internal citations and quotations omitted)(emphasis in the original).

**IV.      CONCLUSION**

For each of the foregoing reasons, Relator requests that the Court reconsider its August 2, 2019 Order.


Dated: August 13, 2019                                   Respectfully submitted,

                                                         **JAMES W. HAWKINS, LLC**

                                                         /s/ *James W. Hawkins*
                                                         James W. Hawkins
                                                         Admitted *Pro Hac Vice*
                                                         Georgia State Bar No. 338767
                                                         JAMES W. HAWKINS, LLC
                                                         5470 Blair Valley Run
                                                         Cumming, GA 30040
                                                         V: 678-697-1278
                                                         F: 678-540-4515
                                                         jhawkins@jameswhawkinsllc.com

                                                         *Attorney for Plaintiff and Relator*
                                                         *Michael J. Daugherty*

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel*. Michael J. Daugherty,<br><br>        Plaintiff and Relator,<br><br>v.<br><br>TIVERSA HOLDING CORP., TIVERSA<br>INC., TIVERSA GOVERNMENT INC.<br>and ROBERT BOBACK,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 14-CV-4548-DLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 13, 2019, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notification of such filing to counsel for

parties of record electronically by CM/ECF.

<u>/s/ *James W. Hawkins*</u>
James W. Hawkins
Admitted *Pro Hac Vice*
Georgia State Bar No. 338767
JAMES W. HAWKINS, LLC
5470 Blair Valley Run
Cumming, GA 30040
V: 678-697-1278
F: 678-540-4515
jhawkins@jameswhawkinsllc.com

*Attorney for Plaintiff and Relator*
*Michael J. Daugherty*