IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel*. Michael J. Daugherty,<br><br>  Plaintiff and Relator,<br><br>v.<br><br>TIVERSA HOLDING CORP., TIVERSA<br>INC., TIVERSA GOVERNMENT INC.<br>and ROBERT BOBACK,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 14-CV-4548-DLC |

**PLAINTIFF'S OPPOSITION TO TIVERSA HOLDING CORP.'S, TIVERSA INC.'S AND TIVERSA GOVERNMENT INC.'S MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES**

## I.    INTRODUCTION AND BACKGROUND

As Relator, Michael J. Daugherty stands in the shoes of the United States Government, who is and remains the real party in interest in this litigation.[1]  Under the False Claims Act ("FCA"), the United States retains the right at all times to intervene in the action and to settle or even dismiss the case, even over the Relator's objections.[2]  Despite this retained authority, and despite the fact that the United States was copied on all pleadings and orders in this case, the United States never sought to dismiss this case.  That is because this case is neither frivolous, vexatious or harassing.  More than sufficient evidence existed to file and pursue this case through discovery.  An award of fees and costs under 31 U.S.C. § 3730(d)(4) is unwarranted.

---

[1] *See, e.g., U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1154 (2d Cir. 1993) (government remains the real party in interest in the FCA suit).

[2] *See, e.g.*, 31 U.S.C. § 3730(c)(2)(A).

This action was filed in 2014, approximately three months after former Tiversa Director of Special Operations Richard E. Wallace blew the whistle on Tiversa and Boback's fraudulent practices.  The allegations in this case were supported by information and evidence Wallace provided in privileged communications to the attorney who filed this case, Jennifer Verkamp.[3] Wallace did not disclose that information and evidence directly to Relator because he did not want to waive his Fifth Amendment right against self-incrimination.  Wallace would later testify under criminal immunity about Tiversa and Boback's fraudulent schemes in a Federal Trade Commission ("FTC") administrative enforcement action.

Wallace's immunized testimony in the enforcement action and his deposition testimony here fully support Relator's allegations.  In his deposition in this case, for example, Wallace testified that in 2011, Tiversa found sensitive information relating to aircraft computers on the computer of a TSA employee in Denver, Colorado  (Wallace Depo., 34:8 through 34:16; 59:18 through 60:6)[4] and that before Tiversa entered into the contract with the TSA, Tiversa presented false information to the TSA in the form of "false spread," including using false information to make the file found on the TSA employee's computer look like it had been found in Bogota, Columbia.  (*Id*. 60:7 through 61:5).  This false information was presented to the TSA by Defendant Robert Boback and was based on false information provided by Wallace.  (*Id*. 61:7 through 62:7). Wallace testified not only about fraud before the contract but also about fraud during Tiversa's performance under the TSA contract.  Wallace specifically testified that after Tiversa would report to the TSA that it found a TSA-related file on a peer-to-peer network and the TSA thereafter

---

[3] Ms. Verkamp, a well-known and well-respected FCA attorney, authored the initial Complaint in this case.  She withdrew from this matter because of a conflict of interest.

[4] A true and correct copy of Wallace's deposition testimony in this action is attached hereto, marked as Exhibit A and incorporated by reference herein.

resolved that problem, Tiversa would then falsely report the file as still being available on the internet, even though it was not.  (*Id*. 22:16 through 24:1).[5]  In other words, Tiversa would make it appear as if Tiversa was still finding files on peer-to-peer networks that actually no longer existed there.  This practice was done to foster the view that Tiversa was continuing to provide a valuable service.  (*Id.* 42:12 through 42:24)

Although Wallace's testimony alone is sufficient evidentiary support for the allegations in this case, other evidence supports the allegations against Tiversa and Boback.  For example, in March 2016, during the pendency of this case, the FBI executed a raid on Tiversa headquarters based upon allegations of misconduct by Tiversa and Boback similar to those alleged in this case. In a sworn affidavit by Special Agent Mosi Forde of the Department of Health and Human Services to secure the search warrant for the FBI raid on Tiversa headquarters, the Government accused Tiversa, a so-called cybersecurity company, of using the internet to search for and take sensitive files from third-party computers and then offering the owners of those files Tiversa's "internet security services," which included monitoring and/or data breach remediation services.  Exhibit B hereto is a true and correct copy of Special Agent Forde's affidavit.  That sworn affidavit further asserted that Tiversa made various false and fraudulent statements to the owners of the taken files to induce them to hire Tiversa, to retain Tiversa for ongoing services, and/or to expand their use of Tiversa's services.  Such false statements included false representations of the Internet Protocol addresses ("IP addresses") at which Tiversa purportedly located the sensitive files, and false and fraudulent representations to the file owners that such sensitive documents had "spread" or "proliferated" to one or more other locations on the Internet outside of the owner's computer or business, all for the purpose of fraudulently inducing these potential customers to retain, maintain

---

[5] Wallace similarly supported the dismissed Dartmouth allegations.

or expand their use of Tiversa's monitoring or remediation services. These are the same tactics that Wallace testified Tiversa used with regard to TSA in this case.  Indeed, the search warrant identifies evidence regarding the TSA as some of the items to be seized in the raid.

Additionally, in three different contexts and as set forth in greater detail herein, an FTC administrative law judge, the U.S. House of Representatives Committee on Oversight and Government Reform and the Federal Trade Commission all found that Boback was not a credible witness because he had falsely testified about and fabricated evidence regarding Tiversa's allegations of spread.  A federal appellate judge in the Eleventh Circuit Court of Appeals has also recognized and called out Tiversa and Boback's coercive tactics and frauds.  Specifically, in July 2017, at oral argument in LabMD's appeal of the FTC's reversal of its ALJ's decision in favor of LabMD,[6] for example, Judge Gerald B. Tjoflat admonished counsel for the FTC as follows:

> THE COURT: Well, Counsel, let me put it this way. What -- the aroma that comes out of the investigation of this case is that Tiversa was shaking down private industry with the help of the FTC, will go to the -- with the threat of going to the FTC: "If you don't cooperate we will go to the FTC."  It may well be how they got some of their clients. But that's – that's an aroma that -- and with falsifications to the Commission. The administrative law judge just shredded Tiversa's presentation, just totally annihilated it.[7]

Despite all of these facts, evidence and background, Tiversa and Boback now seek to recover their attorneys' fees and costs, alleging that this lawsuit was clearly frivolous, clearly vexatious and filed primarily for harassing purposes.  Their motions are without factual or legal merit, and this Court should deny the motions.

---

[6] As of September 20, 2019, an audio recording of the oral argument in *LabMD, Inc. v. FTC*, 891 F.3d 1286 (11th Cir. 2018) was available at http://www.ca11.uscourts.gov/oral-argument-recordings.

[7] In an opinion authored by Judge Tjoflat, the Eleventh Circuit found in favor of LabMD against the FTC holding that the FTC's cease and desist order against LabMD was unenforceable. The court vacated the FTC's ruling against LabMD.  *LabMD, Inc. v. FTC*, 894 F.3d 1221 (11th Cir. 2018)

## II.    STATEMENT OF FACTS

### A.    Wallace Blew the Whistle on Tiversa and Boback.

On April 2, 2014, Relator Michael J. Daugherty received a telephone call from former Tiversa Director of Special Operations Richard E. Wallace.  Wallace disclosed to Daugherty that he left Tiversa after Wallace's former boss, Defendant Robert Boback, demanded that Wallace lie in an upcoming deposition in an administrative enforcement action filed by the FTC against LabMD, Inc., Daugherty's company.   See ¶ 9 of accompanying declaration of Michael J. Daugherty ("Daugherty Decl.").  Wallace told Daugherty that Boback lied when he testified in the enforcement action that Tiversa found a LabMD file (referred to as the "1718 File") containing confidential patient information on computers at four different IP addresses.[8]   Id.   Wallace expressed his fear that Boback would retaliate against him for blowing the whistle on Tiversa.  Id. ¶ 10.

### B.    Boback and Tiversa Attempted to Prevent Wallace From Testifying About Tiversa's Use of False Spread.

Wallace's fear of Boback and Tiversa was well-founded.  According to Wallace, Boback engaged in many attempts to intimidate and terrorize Wallace and his family to prevent Wallace from testifying in the enforcement action.[9]  Those efforts failed.  On May 5, 2015, Wallace, who

---

[8] LabMD was a cancer detection laboratory that served approximately 750,000 patients.  Daugherty Decl. ¶ 4.

[9] When Wallace told Boback he would not lie under oath, Boback brandished a firearm and threatened Wallace if he did not tell the story as Boback wanted.  See ¶¶ 65-70 in Exhibit C hereto.  In addition, after Tiversa and Boback learned that Wallace was working with Daugherty's company and its lawyers in the enforcement action, the following occurred:

–   On June 3, 2014, Mr. Wallace found a note written on Tiversa letterhead in his shed, which read "I C U!"  (Exhibit C hereto at ¶ 87).  A copy of a photograph of that note is attached hereto as Exhibit D hereto. Additionally, cords on Mr. Wallace's power tools had been cut, and the family dogs were found outside after having been locked within the house.  (Ex. C hereto at ¶ 88).  A copy of a photograph of the cut power tool cords is attached hereto as Exhibit E hereto.

–   On June 26, 2014, Boback appeared driving behind Mr. Wallace's car on I-79 in Pittsburgh where he alternated between passing Mr. Wallace, following Mr. Wallace, and slowing down in front of

had obtained immunity from criminal prosecution from the Department of Justice ("DOJ"),[10] testified that Tiversa had taken LabMD's file directly from a LabMD computer and, contrary to Boback's testimony, never located the file on other computers inside or outside of LabMD.  *See* pp. 1366-85 and 1390 of Exhibit H hereto.[11]  Wallace's testimony and other evidence was so convincing that the FTC concluded "that Mr. Boback's assertion that Tiversa had gathered evidence showing that the 1718 File had spread to multiple Internet locations by means of LimeWire *was false* and that the document that purported to list Internet locations where the 1718 file had been found (CX0019) was unreliable."  *In the Matter of LabMD, Inc.*, 2016 FTC LEXIS 128, *91 (F.T.C. July 28, 2016), *vacated*, *LabMD, Inc. v. FTC*, 894 F.3d 1221 (11th Cir. 2018) (emphasis added).  Tiversa's established scheme of using false spread to generate business, along with Mr. Boback's lack of credibility in denying the same, were at the core of this case.

---

    Mr. Wallace's car.  While Mr. Wallace attempted to pass Boback, Boback tried to run Mr. Wallace off the road. (Ex. C hereto at ¶¶ 89-90).

–    On or about October 20, 2014, Mr. Wallace's wife found a note in their personal mailbox that said, "WATCH OUT."  (*Id* at ¶ 108).

–    On October 31, 2014, Boback and Tiversa filed defamation claims in a Pennsylvania state court against Wallace because he allegedly provided false and disparaging information to the U.S. House of Representatives Committee on Oversight and Government Reform and to LabMD's law firm. See ¶¶ 50, 57 and 63 of Exhibit F hereto.

–    On April 15 or 17, 2015, a message, written in pink chalk, stating "U R DEAD"  appeared at the end of Mr. Wallace's driveway. (Ex. C at ¶ 109).  A copy of a photograph of that message is attached hereto as Exhibit G.

–    Shortly before Mr. Wallace was scheduled to testify in the enforcement action in Washington, D.C. on May 5, 2015, Mr. Wallace was informed that his hotel reservation at the Mayflower Hotel was cancelled.   According to the front desk attendant at the Mayflower, Boback cancelled the reservation.  (Exhibit C hereto at ¶¶ 110-111).

[10] *See* Exhibit I hereto.

[11] Exhibit H is a true and correct copy of a transcript of Wallace's May 5, 2015 testimony in the trial of the enforcement action.

### C.    Boback and Tiversa Retaliated Against Relator's Company.

Boback alleges that this suit was filed by Relator primarily to harass him, but it is Boback who has harassed Relator Daugherty and all but destroyed his company, LabMD.  As an FTC ALJ already found in an Initial Decision: "In order to *retaliate against* LabMD [Daugherty's company] for refusing to purchase Tiversa's services, Mr. Wallace testified, Tiversa reported its discovery of the 1718 File to the FTC; and Mr. Wallace, at the direction of Mr. Boback, *manipulated Tiversa's Data Store* to make it appear that the 1718 File had been found at four IP addresses, including IP addresses of known identity thieves, and *fabricated a list* of those IP addresses, which Complaint Counsel introduced into evidence as CX0019."  See FTC Initial Decision at pp. 9-10 (emphasis added). A true and correct copy of the Initial Decision is attached hereto as Exhibit J. In similar fashion here, as alleged in the Complaint and supported by Wallace's sworn testimony, Tiversa falsely represented to the TSA that sensitive TSA documents relating to air travel safety screening procedures had spread to a computer with an IP address in Bogota, Colombia.  The TSA here was just one of the countless victims of Tiversa's fraudulent attempts to induce victims to hire Tiversa for remediation and monitoring services based on fictitious data security data that was fabricated by Tiversa but presented to the victims as fact.  As shown in the Congressional report (ECF No. 72-1), the affidavit used to obtain the search for the Tiversa raid (Exhibit B hereto), and other sources (*e.g.*, Judge Tjoflat's comments at oral argument), this fraudulent scheme was Tiversa's modus operandi for generating business.

### D.    Wallace Was the Main Source of the Allegations in the Original and Amended Complaints.

Approximately a year before Wallace testified in the FTC enforcement action, Wallace and Daugherty engaged Attorney Jennifer Verkamp of Morgan & Verkamp to represent them in connection with this *qui tam* action.  Exhibit 1 to Daugherty Decl. is a true and correct copy of

Daugherty and Wallace's engagement agreement with Verkamp's law firm.  As shown in the engagement agreement, Verkamp created joint and separate attorney-client relationships with Daugherty and Wallace.  Separate relationships were needed because Wallace would only disclose evidence of Tiversa's frauds against the U.S. Government to Verkamp in a privileged communication.  Daugherty Decl. ¶ 13.  Although Daugherty was certainly aware of Tiversa and Boback's fraudulent modus operandi based upon his own personal experience, Wallace's broader and later immunized library of information and evidence was the basis for the core allegations in the original and amended complaints here.

The original complaint was filed in this action on June 24, 2014.  Almost four (4) years later, the federal government filed a Notice of Election to Decline Intervention.  ECF No. 33.  Although it could have at any time, the Government never sought to dismiss this action, as it had a right to do under 31 U.S.C. § 3730(c)(2)(A).  Instead, the Government requested that all pleadings and briefs filed in this action be served upon it and reserved its right to intervene in this action for good cause at a later date.  *Id.*  And, when Relator decided to dismiss this action, the Government specifically requested that the dismissal with regard to it be *without* prejudice.  ECF No. 185.

Discovery began on December 7, 2018, almost four and a half (4½) years after the original complaint was filed and approximately seven (7) years after Tiversa began making misrepresentations to the TSA.  ECF No. 94.  The fact that discovery did not go the way that Relator had expected, memories faded and documents went missing with the passage of time all played a significant role in Relator's decision to voluntarily dismiss this case.[12]

---

[12] Additionally, Relator could not have foreseen that the TSA, the direct victim of the fraud, would choose not to cooperate in this case by using the *Touhy* process to deny Relator access to discovery that would have established the reliance on and materiality of Tiversa's frauds through direct evidence.

**E.      Boback's Testimony - "I Don't Know.  I Don't Remember.  I Don't Recall."**

In ¶ 39 of the Amended Complaint ("Am. Compl."), Relator alleged that in late spring or summer of 2011, Boback met with representatives of the Department of Homeland Security ("DHS") and the TSA at a DHS office in Arlington, VA.  Relator further alleged, on information and belief, that one of the individuals with whom Boback met was Greg Maier, Chief Information Technology Security Operations for DHS.

Boback testified in his June 25, 2019 deposition in this case that while he recalled attending a meeting where TSA employee Greg Maier was present, Boback allegedly could not recall: (1) whether a presentation was made at the meeting; (2) what was said by any of the TSA employees at the meeting; (3) what Boback said at the meeting; (4) whether Tiversa was trying to sell its services at that meeting; (5) who invited Tiversa to attend the meeting; (6) how long the meeting lasted; (7) when the meeting occurred; (8) what year the meeting took place; (9) in what city the meeting occurred; (10) whether Wallace prepared information or a report for Boback before the meeting; (11) whether Tiversa gave examples of what it could do for the TSA; or (12) whether there was any discussion of Tiversa finding TSA files on peer-to-peer networks.  Boback claimed he could not recall whether Tiversa had found TSA files before this meeting. (Boback Depo., 57:12 through 70:24).[13]  Boback's repeated assertions in his deposition here that he did not remember, did not know and could not recall were not credible and most certainly impeded the search for the truth here.[14]

---

[13] Exhibit K hereto is a true and correct copy of the transcript of Boback's deposition in this case.

[14] At his deposition, Boback claimed he could not remember, did not know or could not recall information responsive to approximately 180 questions.

Boback's credibility issues are well documented.  On November 1, 2015, Boback was deemed unbelievable by FTC Administrative Law Judge D. Michael Chappell, who specifically stated in his Initial Decision that Boback was "not a credible witness concerning LabMD…."  See p. 34 of Exhibit J hereto.  On January 2, 2015, the U.S. House of Representatives Committee on Oversight and Government Reform, after investigating Tiversa, published a staff report in which one of its findings was, "Boback *provided false testimony* about *fabricated documents* to the U.S. House of Representatives."  *See* p. 6 of ECF No. 72-1 (emphasis added).  And, as noted above, the Federal Trade Commission itself recognized that Boback had given false testimony and Tiversa had fabricated evidence.

Here, Relator's efforts to get to the truth of Tiversa's fraud against the TSA (and, more broadly, the American taxpayers) was not unsuccessful because those allegations are untrue. Instead, these efforts were thwarted by  Boback's established willingness to testify falsely, his clear refusal to provide truthful testimony in this case, and Tiversa's refusal to cooperate in the discovery process.

### F. Wallace Testified Regarding Tiversa and Boback's Misrepresentations to the TSA.

In an attempt to support its motion, Tiversa argues that "[t]here was no evidence of fraudulent statements made by Tiversa to the TSA prior to the execution of the Tiversa-TSA contract…."[15]  *See* Tiversa Motion at ¶ 29.  This is entirely false.  Wallace testified during his June 26, 2019 deposition in this case that in 2011, Tiversa found sensitive information relating to aircraft

---

[15] In ¶ 40 of the Am. Compl., Relator alleged that Boback showed Maier and others at the TSA a fabricated report and falsely informed them that sensitive search procedures for aircraft computers had been found on computers in foreign countries (possibly including Colombia, Yemen and/or Kenya).  Relator further alleged that Tiversa did not find the sensitive information on any computer other than the aforementioned computer of the TSA employee in Denver and that Boback and Tiversa knew that fact and knew the representations that the sensitive information was found on other computers were fabricated and false.

computers on the computer of a TSA employee in Denver, Colorado.   (Wallace Depo., 34:8

through 34:16; 59:18 through 60:6).   Wallace further testified that before Tiversa entered into the

contract with TSA, Tiversa presented false information to the TSA in the form of "false spread,"

including using false information to make the file found on the TSA employee's computer look

like it had been found in Bogota, Columbia.   (*Id.* 60:7 through 61:5).   This false information was

presented to the TSA by Boback and was based on false information provided by Wallace.   (*Id.*

61:7 through 62:7).   Wallace attended the meeting at which Boback presented this false

information.   (*Id.* 34:20 through 38:16).

At his deposition, Wallace could not remember whether the false information Boback

presented to the TSA came from a report but a document containing the following[16] is believed to

be the report that Wallace prepared for Boback:

> Sensitive documents related to air travel safety screening procedures identified at
> IP in Bogota, Columbia.

> Other data at same IP had many other sensitive documents related to air travel
> facility infrastructure and airline personnel.

> Also at this IP address, Tiversa found multiple files that referenced al-Queda [sic]
> and the support of their mission.

> U.S. Intelligence officials were briefed by Tiversa, Tiversa was then tasked to
> identify the originating source of the information being harvested by the individuals
> in Columbia.

> Tiversa identified the source of the information who was a TSA supervisor assigned
> to a major U.S. airport.

---

[16] Tiversa withheld this document from its production on April 9, 2019.  Without any explanation for its delay, Tiversa
waited until June 14, 2019, just two weeks before the close of discovery, to produce this document.

A true and correct copy of this document is attached hereto, marked as Exhibit L and incorporated by reference herein.[17] The TSA, of course, could have confirmed whether this report or others like it were presented to it in this meeting or any others, but efforts to obtain discovery from the TSA were unsuccessful.

Tiversa also alleges in support of its motion that "There was no evidence…that Tiversa fraudulently performed the Tiversa-TSA contract."[18] *See* Tiversa Motion at ¶ 29.  This is also false.  Wallace specifically testified that after Tiversa would report to the TSA that it found a TSA-related file on a peer-to-peer network and the TSA remedied the problem on its own, Tiversa would then falsely report the file as still being available on a peer-to-peer network.  (*Id.* 22:16 through 24:1).  This testimony is consistent with notes from a July 20, 2016 FBI interview (presumably of Wallace) – "This ticket was a repeat disclosure."[19]  Wallace further explained that because TSA was such a significant client, Tiversa needed to keep the agency happy by providing a large volume of tickets.  (*Id.* 21:18 through 22:10).

### G.    Tiversa Was Raided By Federal Law Enforcement To Look For, Among Other Things, Evidence of Frauds Relating to the TSA.

On March 1, 2016, while this suit was pending, Tiversa headquarters in Pittsburgh, Pennsylvania were raided by the FBI in connection with an investigation by Main Justice and the Department of Health and Human Services ("DHHS").  This investigation ran in parallel with the investigation conducted by the U.S. Attorney's Office in the Southern District of New York in this

---

[17] FBI interview notes from July 20, 2016 state, "[Redacted] recalled falsely spreading a document related to TSA security procedures.  [Redacted] wrote a memo to DHS IG and TSA regarding this document."  See Exhibit M.  The document discussed above, Exhibit L, fits the description of what was sent to DHS IG and TSA.

[18] In ¶¶ 46, 48 and 50 and 164 of the Am. Compl., Relator alleged that false representations fraudulently induced the TSA to extend its Definitive Contract with Tiversa.

[19] The FBI interview notes were obtained by Relator in response to a FOIA request.  A relevant portion of those notes is attached hereto, marked as Exhibit M and incorporated herein by reference.

matter.   On February 29, 2016, District Court Judge Robert C. Mitchell of the United States

District Court for the Western District of Pennsylvania issued a search warrant for the raid.  A true

and correct copy of the search warrant is attached hereto as Exhibit N.  That warrant was based on

an Affidavit In Support Of An Application Under Rule 41 For A Warrant To Search And Seize

("Affidavit") executed under oath by Special Agent Mosi Forde of DHHS.  A true and correct

copy of this affidavit is attached hereto as Exhibit B.  In the General Background section in ¶ 8

beginning on p. 4 of the Affidavit, Special Agent Forde gives the same general description of

Tiversa's misconduct as alleged by Relator in the original and amended complaints here:

> Among other things, the evidence set forth below demonstrates that (a) Tiversa
> used proprietary software to scan network traffic for peer-to-peer (also called
> "P2P") programs and thereby identified data security vulnerabilities (*e.g.*, files
> exposed to other users on the internet) and acquired copies of proprietary,
> regulatory, and/or sensitive documents, including documents containing personal
> identification information and protected health information; (b) Tiversa offered
> companies data and internet security services in relation to such files, including
> monitoring and/or data breach remediation services; and (c) Tiversa engaged in a
> fraudulent scheme which included the making of various false and fraudulent
> statements, pretenses, and representations to such companies in order to induce
> such companies to hire Tiversa, to retain Tiversa for ongoing services, and/or to
> expand their use of Tiversa's services. As set forth in greater detail below, such
> false and fraudulent statements, pretenses, and representations included false and
> fraudulent representations of the Internet Protocol addresses ("IP addresses") at
> which Tiversa purportedly located a company's sensitive documents, and false and
> fraudulent representations to companies that such sensitive documents had
> "spread" or "proliferated" to one or more other locations on the Internet, all for the
> purpose of inducing these companies to retain, maintain, or expand their use of
> Tiversa's monitoring or remediation services.

As shown on Attachment B to the Affidavit (ECF p. 63), items to be seized from Tiversa included

records, documents and information of any kind that referred or related to the TSA.  In sum, The

DOJ did more than just investigate Tiversa and Boback here.  The investigation led to a raid

supported by a search warrant where a federal agent swore to these allegations under oath, and a

federal judge found probable cause for the FBI to search Tiversa's records for fraud relating to the

TSA. The probable cause showing required for this search warrant in a criminal matter is, of course, a more demanding standard than the civil pleading requirements of Fed. R. Civ. P. and Fed. R. Civ. 9.

### H. Relator Sought Evidence of the TSA's Reliance.

In its motion, Tiversa alleges that "Relator...never attempted to confirm, reliance or materiality by the Government upon the alleged fraud." *See* Tiversa Motion at ¶ 10. This is simply not true. As this Court is well aware, Relator sought both documents and deposition testimony from the TSA itself. Exhibit O hereto is a true and correct copy of a Notice of 30(b)(6) Deposition of Department of Homeland Security, Transportation Security Administration, which was served by Relator in this case, and Exhibit P is a true and correct copy of the subpoena duces tecum also served on the Government. The following items were included in the Topics for Examination in Exhibit O:

> 4. TSA's determination that TSA needed the Services, its decision to enter into a contract for the Services and its decision to engage Tiversa to provide the Services.
>
> 5. Oral and written representations made by Tiversa that were relied upon by TSA in determining whether to enter into the TSA Definitive Contract and/or the TSA Definitive Contract Extension with Tiversa.
>
> 7. Reasons TSA believed that representations made by Tiversa regarding the need for the Services and Tiversa's ability to provide the Services were honest, truthful or accurate.

In response to the subpoena, the DOJ produced a small collection of documents but declined in a letter dated June 20, 2019, to produce any witnesses in response to the Rule 30(b)(6) notice of deposition. Exhibit Q is a true and correct copy of that letter.[20] In response to the

---

[20] One of the documents produced by the Government shows that at least one of the TSA employees was suspicious about Tiversa. That document, Exhibit R hereto, includes May 11, 2015 emails by TSA employees Greg Maier and Dale Beauchamp in response to a recently-published news article indicating that, based on testimony from Wallace in the enforcement action, the FTC may have destroyed Daugherty's company with bogus evidence. Referring to Wallace, Maier stated in the subject line of his email, "Remember this guy?" In response, Beauchamp expressed the

Government's refusal to produce a TSA witness to testify about the TSA's reliance on and materiality of Tiversa and Boback's misrepresentations, Relator filed a letter motion requesting an informal conference on the issue.  ECF No. 127.  On June 26, 2019, this Court ordered that Relator's request for a 30(b)(6) deposition of a TSA witness was denied for the reasons stated in the Government's June 20, 2019 letter.  ECF No. 130.  Relator's attempt to confirm reliance on and materiality of the alleged fraud to the TSA are patent, and Tiversa's allegations to the contrary are facially incorrect.

On August 16, 2019, approximately seven (7) weeks after the Court denied Relator's request to take the TSA's deposition and within days of this Court's denial of his motion to reopen discovery, Relator moved for a voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2).  The requested dismissal was with prejudice for Relator and, at the Governments' request, without prejudice as to the Government.  ECF No. 181.  Tiversa and Boback consented to the proposed dismissal, ECF Nos. 182 and 183, and the Government confirmed its consent to the proposed dismissal "because it does not intend to pursue Relator's allegations at this time."  ECF No. 185.  The Court dismissed this action on August 21, 2019.  ECF No. 186.

## III.    ARGUMENT AND CITATION OF AUTHORITY

Tiversa and Boback rely solely upon 31 U.S.C. § 3730(d)(4) as the basis for their claims for attorneys' fees.  That section provides:

> If the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses *if the defendant prevails in the action and* the court finds that the claim of the person bringing the action was *clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment*.

---

suspicion about Tiversa when he said, "they did have a questionable approach and were very tight lipped about the technology they used.  I recall only Two [sic]  people were allowed in the server room."

31 U.S.C. § 3730(d)(4) (emphasis added).  Here, Defendants have not prevailed in this action: instead, Relator voluntarily and appropriately dismissed it prior to any final adjudication on the merits, and the Government, the real party in interest,  specifically retained its right to pursue these allegations at a different time through insisting upon a dismissal without prejudice.

Even if Defendants had prevailed (which they did not), an award of fees would be unwarranted here.  "The award of fees under the False Claims Act is reserved for *rare* and *special* circumstances." *Pfingston v. Ronan Eng'g Co*., 284 F.3d 999, 1006-07 (9th Cir. 2002) (emphasis added).  The bar for a defendant to recover attorneys' fees and costs is intentionally set high. "The purpose of the [FCA] is to encourage citizens to act as 'whistle blowers' and to assist in exposing fraud against the government. . . . .  The erection of unrealistic barriers to such actions would defeat the purpose of the Act." *Johnson v. The Univ. of Rochester Med. Ctr*., 686 F. Supp. 2d 259, 264 (W.D.N.Y. 2010); *see also Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 295 (S.D.N.Y. 2013) ("The FCA 'is the United States Government's primary tool for redressing fraud against the Government.' Claire M. Sylvia, *The False Claims Act: Fraud Against the Government* § 1:1.")

 "A[n FCA] claim is frivolous when, viewed objectively, it may be said to have no reasonable chance of success, and present no valid argument to modify present law." *United States ex. rel. Mikes v. Straus*, 274 F.3d 687, 705 (2d Cir. 2001) *overruled in part on other grounds*, *Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 195 L. Ed. 2d 348 (2016).  The claims in this case were not frivolous, vexatious, or brought primarily for purposes of harassment.  Instead, these claims, which were supported by sworn testimony, were brought in an attempt to hold Tiversa and Boback, whom the FTC and the U.S. Congress have determined have lied to and defrauded the American taxpayers, accountable for their frauds on the TSA.

Because Tiversa and Boback did not prevail here and because they cannot establish that Relator's claims had no chance of success, there is no proper basis for an award of attorneys' fees here.

### A.   Relator's Alleged Lack of Firsthand Knowledge of the Underlying Allegations in The Complaint Is Irrelevant.

Tiversa and Boback repeatedly assert in their motions that Relator had no independent knowledge about the frauds at issue, and they suggest that the Relator's lack of direct knowledge was somehow improper or demonstrates that the suit lacked merit.  That suggestion, however, is directly contrary to the FCA statute itself, which allows any "person" to bring an FCA action in the name of the Government, 31 U.S.C. § 3730(b)(1), and only requires that a relator be the "original source" of the information underlying an FCA *qui tam* lawsuit if the suit is based on information that has been publicly disclosed prior to the filing of the lawsuit.  *See* 31 U.S.C. § 3730(e)(4)(A)-(B).[21]   In this case, this Court has already specifically ruled that the public disclosure bar does not apply to the TSA claims in this lawsuit.  ECF No. 85 at 12-13.  As such, Relator was not required to be the original source of the information.  Defendants' repeated reference to Relator's lack of personal knowledge, therefore, is entirely irrelevant.

---

[21] *See, e g., U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 43 F. Supp. 3d 332, 353–54 (S.D.N.Y. 2014) (claims not barred by the public disclosure bar whether or not Relator qualifies as an "original source;" when those claims were not publicly disclosed prior to filing of *qui tam* lawsuit);  *see also U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 651 (D.C. Cir. 1994) ("The 1986 *qui tam* amendments set up a two-part test for determining jurisdiction. First, the reviewing court must ascertain whether the "allegations or transactions" upon which the suit is based were "public[ly] disclos[ed]" in a "criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit or investigation, or from the news media." 31 U.S.C. § 3730(e)(4)(A).  *If—and only if—the answer to the first question is affirmative*, *see Wang v. FMC Corp.,* 975 F.2d 1412, 1416 (9th Cir.1992), *will the court then proceed to the "original source" inquiry, under which it asks whether the qui tam plaintiff "has direct and independent knowledge of the information on which the allegations are based*." 31 U.S.C. § 3730(e)(4)(B).  Under such circumstances, if the *qui tam* plaintiff qualifies as an original source, the action may proceed; if she does not, the action is barred.

**B.      Defendants' Factual Allegations in Support of Their Motions Are Incorrect.**

As noted above, each of the arguments that Defendants make in an attempt to support their motions are easily refuted by the actual facts and evidence.  For example, Tiversa and Boback claim that there was no evidence of fraudulent statements made by Tiversa to the TSA prior to the execution of the Tiversa-TSA contract, but, as noted above, Wallace's testimony makes clear that there was.  (Wallace Depo. 60:7 through 62:7).  Defendants further claim that there was no evidence that Tiversa fraudulently performed the Tiversa-TSA contract, but Wallace's testimony, again, makes clear that there was intentional fraud in the performance of this contract. (*Id*. 22:16 through 24:1; 42:12 through 42:24).

As further shown above, Tiversa's claims that Relator never attempted to confirm reliance or materiality by the Government upon the alleged fraud are belied by the plain record.  Relator served subpoenas on the Government for documents and testimony on these very issues.  See Exhibits O and P.  And the fact that Relator might not have ultimately been able to prove reliance is certainly not ground for attorneys' fees, especially in the FCA context.  A plaintiff is not required to establish all of the elements of a claim to avoid the imposition of attorneys' fees.  *See Int'l Bhd. of Carpenters & Joiners of Am., AFL-CIO, Local Union No. 217 v. G.E. Chen Constr*., 136 F. App'x 36, 38 (9th Cir. 2005)

**C.      The Legal Authority Cited by Defendants Actually Supports A Denial of Their Motions for Attorneys' Fees.**

Tiversa cites this Court's decision in *U.S. ex rel. Fox Rx, Inc. v. Omnicare, Inc*., 2014 WL 6750277  (S.D.N.Y. 2014) and the Second Circuit's decision in *Mikes* for the proposition that an award of fees may be appropriate where, among other facts, a defendant had no financial incentive to engage in the alleged misconduct.  While that principle may apply in some cases, it has no

bearing on the facts in this case.  Indeed, here, as Wallace's testimony and the documents in this case make clear, Tiversa's entire motivation was financial – it had a significant financial incentive to misrepresent the spread of the TSA's files in order to secure, keep, and renew the TSA contract. Tiversa created and/or greatly exaggerated a problem in order to convince the TSA that Tiversa could provide a valuable service.  In so doing, Tiversa convinced the TSA to pay Tiversa $648,000.

Tiversa also cites *Fox Rx, Inc.* and *Mikes* for the proposition that an award of fees may be appropriate where, among other facts, plaintiff cited no evidence that the misconduct occurred. This reasoning actually mitigates against Defendants' motions.  As set forth in greater detail herein, there is ample evidence that misconduct occurred.  Former Tiversa Director of Special Operations Wallace testified, based on first-hand knowledge,[22] that before Tiversa entered into the contract with TSA, Tiversa presented false information to the TSA in the form of "false spread," including using false information to make a file found on a TSA employee's computer look like it had been found in Bogota, Columbia.  (Wallace Depo., 60:7 through 61:5).  Wallace further testified that after Tiversa would report to the TSA that it found a TSA-related file on a peer-to-peer network and that when the TSA would attempt to take care of the problem itself, Tiversa would then falsely report the file as still being available on a peer-to-peer network.  (*Id*. 22:16 through 24:1).  The FTC, the FTC's ALJ, the U.S. House of Representatives Committee on Oversight and Government Reform and the Eleventh Circuit Court of Appeals have all also found that Tiversa and Boback engaged in the same type of misconduct alleged here.  Thus, if this aspect of *Fox Rx, Inc.* and *Mikes* is applied in this case, this Court would deny Defendants' motions for attorney's fees.

---

[22] Indeed, Wallace admitted he knowingly provided false information to Boback and Boback provided that false information to the TSA.

In sum, this case is not one of those rare or special FCA cases in which the grant of attorneys' fees is warranted or even appropriate.  Tiversa and Boback did not prevail here, and they have not and cannot come close to meeting the high bar required to show entitlement to such fees.  Their arguments in support of their motions are easily refuted by the record evidence in this case.  Relator ultimately made the responsible decision not to force this case to trial because of the challenges in discovery and the TSA's choice not to cooperate in this case, not because it had not proved misconduct by Defendants.  Had discovery gone differently, there would have been a real chance of success at trial – indeed, the Government never sought to dismiss this case and, in fact, insisted that its dismissal in this case be without prejudice, ostensibly to leave open the opportunity to pursue these matters at a later time.

It cannot be said that there was no chance of success here.  The allegations in the complaint were supported by testimony from a whistleblower with first-hand knowledge of the frauds.  The claims were not "clearly frivolous," "clearly vexatious" or brought primarily for purposes of harassment.  See ¶ 16 of Daugherty Decl. This Court should deny Defendants' motion for attorneys' fees.

## IV.    CONCLUSION

The FCA encourages relators to come forward with claims even when the Government chooses not to intervene.  Awarding attorneys' fees to defendants like Tiversa and Boback under these circumstances would create a chilling effect in the fight against fraud on the Government.

For each of the foregoing reasons, Relator respectfully requests that the Court deny Tiversa and Boback's motions for fees and costs.

Dated: September 20, 2019

Respectfully submitted,

**JAMES W. HAWKINS, LLC**

<u>/s/ *James W. Hawkins*</u>
James W. Hawkins
Admitted *Pro Hac Vice*
Georgia State Bar No. 338767
JAMES W. HAWKINS, LLC
5470 Blair Valley Run
Cumming, GA 30040
V: 678-697-1278
F: 678-540-4515
jhawkins@jameswhawkinsllc.com

*Attorney for Plaintiff and Relator*
*Michael J. Daugherty*

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel*. Michael J. Daugherty,<br><br>          Plaintiff and Relator,<br><br>v.<br><br>TIVERSA HOLDING CORP., TIVERSA<br>INC., TIVERSA GOVERNMENT INC.<br>and ROBERT BOBACK,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 14-CV-4548-DLC |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 20, 2019, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel

for parties of record electronically by CM/ECF.

<u>/s/ *James W. Hawkins*</u>
James W. Hawkins
Admitted *Pro Hac Vice*
Georgia State Bar No. 338767
JAMES W. HAWKINS, LLC
5470 Blair Valley Run
Cumming, GA 30040
V: 678-697-1278
F: 678-540-4515
jhawkins@jameswhawkinsllc.com

*Attorney for Plaintiff and Relator*
*Michael J. Daugherty*
